322 So.2d 222 (1975)
STATE of Louisiana
v.
Lal S. ROACH, Jr.
No. 56447.
Supreme Court of Louisiana.
November 3, 1975.
*224 Samuel P. Love, Sr., Love, Rigby, Dehan & Love, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ronald C. Martin, Dist. Atty., R. Raymond Arthur, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Lal S. Roach, Jr. was charged by bill of information with possession of marijuana in violation of La.R.S. 40:966(C). After trial by a judge on September 13, 1974, he was found guilty. He was sentenced to pay a fine of $500.00 and costs or in default thereof to serve six months in the parish jail. Additionally, he was sentenced to serve six months in the parish jail, all but ten days of which were suspended. On appeal, defendant relies upon five assignments of error for reversal of his conviction and sentence.

FACTS
A warrant was issued to search a house owned by Ray Buckner in Natchitoches for marijuana and hashish. On February 11, 1974, Deputy Sheriff Robert Self, accompanied by three members of the narcotics squad of the Natchitoches Parish Police Department, appeared at the residence to execute the warrant. Defendant, who was the only person present in the residence at the time, allowed them to enter. After presenting the search warrant, Deputy Self asked defendant to be seated while the premises were searched. One of the officers discovered what appeared to be marijuana seeds and gleanings in one of the rooms and showed his finding to Deputy Self. Deputy Self then asked defendant where he slept, and defendant answered, giving the location of his bedroom. Immediately after ascertaining that the marijuana had been found in defendant's bedroom, Deputy Self placed defendant under arrest and gave him the Miranda warnings. One of the other officers, meanwhile, searching the carport in the rear of the house, discovered a paper bag of marijuana cigarettes on a motorcycle that was registered in defendant's name.

ASSIGNMENT OF ERROR NO. 1
Defendant first contends that the trial judge erroneously overruled a motion to suppress the evidence seized pursuant to the search warrant. He alleges that the application for a search warrant failed to recite sufficient facts to establish probable cause for its issuance.[1]
*225 Article 162 of the Code of Criminal Procedure[2] states in pertinent part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
In Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964), also involving a search for illegal drugs, the United States Supreme Court set forth two requirements that must be met before a search warrant may issue. First, the magistrate must be informed of some of the underlying circumstances from which the informant concuded that the narcotics were where he claimed they were. Second, he must be informed of the underlying circumstances from which the affiant concluded that the informant was credible or his information was reliable.[3]
We believe that the search warrant sub judice met the "two-pronged test" established by Aguilar. The affidavit recited that the second informant personally observed that marijuana and hashish were being sold at the specified address. In State v. Paciera, 290 So.2d 681 (La.1974), we stated that direct personal observation by the informant was a factor that supports the reliability of the information reported.[4] The affidavit further recited that the information supplied by him had resulted in sixteen arrests during the previous five months. This factor supports the informant's credibility. See State v. Martin, 318 So.2d 25 (La.1975); State v. Paciera, supra. No requirement exists, as defendant contends, that the arrests must have resulted in convictions. The information supplied by the first informant alone did not establish probable cause, but it does serve to corroborate the statements of the second one. See State v. Boudreaux, 304 So.2d 343 (La.1974); State v. Paciera, supra.
Defendant further attacks the affidavit on the ground that it does not specifically state that the informant communicated the facts directly to the affiant. We believe that the context of the application clearly indicates that the informant reported directly to the affiant. Affidavits must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), cited with approval in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). We therefore conclude that the affidavit recited sufficient facts to show probable cause for the magistrate's issuance of a search warrant.
In his brief on appeal, defendant urges a second ground on which the motion to suppress should have been granted. The motorcycle on which the officers found evidence of marijuana was parked in a carport, or garage, in the rear of the house that was searched. Noting that the search warrant authorizes the search of the *226 "premises," he argues that the officers were not authorized by the warrant to search the carport, and that the evidence seized therein was inadmissible at trial.
The motion to suppress the evidence, however, was clearly predicated on the sole ground that the search warrant was invalid because issued without a showing of probable cause in the affidavit. Defendant has raised the issue concerning the scope of the warrant for the first time on appeal.
Article 703(C) of the Code of Criminal Procedure states that on the trial of a motion to suppress evidence other than written inculpatory statements the burden of proof is on the defendant to prove the grounds of his motion. Accordingly, our scope of review should be limited to those grounds on which the motion to suppress was based.
In any event, a search warrant authorizing the search of the "premises" at a stated address must reasonably be interpreted to permit a search of the dwelling house proper, the garage, and any other outbuildings within close proximity of the house proper that one normally associates with and includes within the word "house" or "premises." United States v. Long, 449 F.2d 288 (8th Cir. 1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1206, 31 L.Ed.2d 247 (1972); Fine v. United States, 207 F.2d 324 (6th Cir. 1953), cert. denied, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954); State v. Brochu, 237 A.2d 418 (Me.1967). This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant avers that his statement in reply to Deputy Self, indicating where his bedroom was located in the apartment house, should have been suppressed because at the time it was made he had not been advised of his privilege against self-incrimination as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Defendant is correct in his assertion that his response was highly inculpatory. The Louisiana jurisprudence has established that a person may be deemed to be in "constructive" possession of a controlled substance if, though not in his physical custody, it is subject to his dominion and control. State v. Knight, 298 So. 2d 726 (La.1974); State v. Porter, 296 So.2d 302 (La.1974); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). The jurisprudence has also established that guilty knowledge is an essential ingredient of the crime of possession of a controlled dangerous substance. State v. Knight, supra, and cases cited therein. Hence, defendant's admission that his bedroom was the one in which marijuana was found strongly indicated guilty knowledge and was also evidence of constructive possession.
We do not believe, however, that defendant was entitled to Miranda warnings prior to making the statement. In Miranda, the Supreme Court briefly stated its holding as follows:
[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the procedural safeguards effective to secure the privilege against selfincrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[5]
*227 The Supreme Court did not define precisely the meaning of "custody" or "significant restraint." Clearly, whenever the accused is placed under arrest, Miranda warnings must follow.[6] There are situations falling short of a formal placing in arrest, however, in which the accused may be said to be under custody or significant restraint. See Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). Like the Court of Appeals for the Fifth Circuit, we believe that a determination of whether a defendant prior to arrest has been so deprived of his freedom to act that he must be deemed to be under custodial restraint must be made on a case-by-case basis. United States v. Carollo, 507 F.2d 50 (5th Cir. 1975); Brown v. Beto, 468 F. 2d 1284 (5th Cir. 1972; United States v. Phelps, 443 F.2d 246 (5th Cir. 1971).
Unable to assess the subjective intent of an officer to hold a suspect or the subjective fear of a suspect that he was under restraint, a reviewing court must employ an objective test to determine the necessity for Miranda warnings. United States v. Hall, 421 F.2d 540 (2d Cir. 1969). An examination of the record normally discloses four factors that are particularly helpful in this task: (1) whether, prior to interrogation, probable cause existed to arrest the accused; (2) statements or actions by the police indicating an intention to hold or restrain him; (3) statements or actions by the accused indicating his reasonable belief that he is in custody; and (4) the extent to which the investigation has focused on the accused.
In the instant case, it is evident that the police did not have probable cause to arrest defendant at the time they questioned him. The officers, though aware of defendant's presence at the house, were also aware that the house belonged to Ray Buckner, not defendant. In searching the house, the police had found marijuana in one of the rooms, but did not know which room defendant occupied, if any. As we recently held in State v. Cann, 319 So.2d 396 (La.1975), mere presence in the area where the illegal drug is discovered or mere association with the person who does control the drug or the property where it is located, does not support a finding of possession. Thus, it was not until after the defendant, in response to the one question put to him by Deputy Self, indicated which bedroom was his, was there probable cause for his arrest.[7]
Nor was there evidence in the record of statements or actions by the officers indicating that the accused was in custody or under restraint when the question was asked. According to defendant's testimony, *228 Deputy Self requested defendant to be seated on the sofa to read the warrant as the officers began a search of the premises for the marijuana. Nothing more was said or done by the police to defendant until they asked him the location of his room. The record is similarly devoid of any statements or actions by defendant indicating a reasonable belief that he was in custody or under significant restraint. Although the investigation had arguably begun to focus on him when the question was asked, focus alone does not trigger the necessity for Miranda warnings. Carollo, supra; Hall, supra.
We do not find, therefore, that under the facts of this case defendant was under custodial interrogation. We do find, on the other hand, that the question was asked in a period of "general on-the-scene questioning as to facts surrounding a crime" during which no Miranda warnings are required. Miranda, supra, 384 U.S. at 478, 86 S.Ct. at 1629, 16 L.Ed.2d at 725. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
Deputy Self testified that, when one of the officers approached him during the search, he was carrying a substance that "appeared to be marijuana seeds." Defendant alleges that the trial judge erred in admitting this statement because, under La.R.S. 15:463,[8] the witness was not qualified as an expert on marijuana identification.
At the time that the witness' statement was made, there was no effort to introduce the marijuana in evidence. The purpose of his testimony was to establish that there was probable cause for defendant's arrest. The witness testified that he had been involved in at least five hundred arrests in which marijuana was part of the evidence seized. He also testified that he had attended several seminars for officials charged with the enforcement of drug laws. Certainly, then, he was qualified to express his opinion that a substance "appeared to be marijuana" in order to show his reason for believing that there was probable cause for an arrest.
Moreover, we fail to see how the admission of the statement was at all prejudicial to the defense. The laboratory report of the criminalist (S-5), which was introduced in evidence by stipulation of the parties, states that all of the particles seized were identified as marijuana. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 4
Defendant urges that the trial judge erred in permitting in evidence the bag of marijuana seeds and gleanings discovered during the search. He alleges that the prosecution did not prove an unbroken chain of custody from the time the items were seized until they were admitted in evidence. As proof of the state's "loosely organized" storing procedure, he points to Deputy Self's admission that the key to the seized motorcycle was lost.
This argument has no substance. In State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), we stated:
To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it is offered in evidence.
*229 The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. [citations omitted]
The lack of positive identification goes to the weight of the evidence, rather than to its admissibility. Ultimately, connexity of physical evidence is a factual matter for determination by the jury. [citations omitted]
See also State v. Freeman, 306 So.2d 703 (La.1975); State v. Flood, 301 So.2d 637 (La.1974); State v. Isaac, 261 La. 487, 260 So.2d 302 (1972).
In the instant case, Officer Richard Prudhomme, who accompanied Deputy Self to execute the search warrant, testified that the other officers immediately turned all the evidence over to him. He then placed it in the evidence locker in the narcotics room of the sheriff's office. Deputy Self testified that he controlled the only set of keys to this locker. Officer Prudhomme transported the evidence to the crime lab in Shreveport the following day. He also identified his signature on the evidence transfer receipt (S-4).
The chain of custody was amply established by this testimony. Clearly, it was more probable than not that the marijuana introduced in evidence was related to the case. The trial judge properly permitted its admission in evidence. There is no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 5
In the final assignment of error, defendant alleges that the trial judge committed error when he overruled his motion for a directed verdict of acquittal at the close of the state's evidence pursuant to article 778 of the Code of Criminal Procedure. In State v. Douglas, 278 So.2d 485 (La.1973), we held that the defendant may be granted a directed verdict of acquittal only when the state has produced no evidence to prove a crime or an essential element thereof.
Defendant was charged with the violation of La.R.S. 40:966(C), which provides in pertinent part:
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule I[9] . . ..
In the case at bar, defendant admitted to Deputy Self that the bedroom in which the marijuana was found was his. According to the "pink slip," the motorcycle on which the bag of marijuana was found was registered in defendant's name. Additionally, the stipulated laboratory report indicated that the substances recovered in his bedroom and on his motorcycle were marijuana. Certainly, this constituted some evidence of each element of the crime charged. Hence, the trial judge properly denied the motion for a directed verdict of acquittal. We find no merit in this assignment of error.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] The text of the affidavit of Deputy Self, upon which the warrant was issued, reads as follows:

IN THE 10th Judicial COURT PARISH OF NATCHITOCHES STATE OF LOUISIANA
APPLICATION FOR AND SWORN PROOF OF PROBABLE CAUSE FOR THE ISSUANCE OF A SEARCH WARRANT HEREIN
PERSONALLY CAME AND APPEARED BEFORE ME, the undersigned Judge of the 10th Jud.Dist. Court, Parish of Natchitoches. State of Louisiana. Robert Self of the Natchitoches Parish Sheriff's Office, who, upon being duly by me sworn, depose(s) and say(s):
THAT A SEARCH WARRANT SHOULD BE ISSUED FOR THE SEARCH OF 821 Third Street Natchitoches, Louisiana A house belonging to Ray Buckner.
FOR THE FOLLOWING REASONS:
Informant #1 stated that there was a large shipment of marijuana and hashish coming into town this past week-end. This informant stated that the drugs would be for sale out of a house somewhere on Third Street, Natchitoches, Louisiana.
Informant #2 states that there is marijuana and hashish for sale at 821 Third Street, Natchitoches, La. This informant stated that he saw these drugs and recognized them to be marijuana and hashish. This Informant has proved his reliability by supplying information that has resulted in sixteen (16) drug arrests during the past five (5) months.
[2] See also U.S.Const. amend. 4; La.Const. art. 1, § 7 (1921); La.Const. art. 1, § 5 (1974).
[3] The affidavit held defective in Aguilar, supra, recited only that the affiants "received reliable information from a credible person" and "do believe" that narcotics were for sale. In State v. Wells, 253 La. 925, 221 So.2d 50 (1969), we likewise held that a search warrant was invalid when issued pursuant to an affidavit based on mere belief or suspicion.
[4] The affidavit in this case is therefore distinguishable from the one we held invalid in State v. Linkletter, 286 So.2d 321 (La.1973), where the informant's belief was unsupported by factual statement.
[5] The footnote to this passage of the opinion states: "This was what was meant in Escobedo when it spoke of an investigation which had focused on an accused." This was a reference to Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), which imposed what has incorrectly been interpreted as a "focus" test on the admissibility of inculpatory statements. The full holding of Escobedo was as follows:

We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogation that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied `the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as `made obligatory upon the States by the Fourteenth Amendment,' [citation omitted] and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.
378 U.S. at 490-91, 84 S.Ct. at 1765, 12 L.Ed.2d at 986.
Although the investigation had arguably begun to "focus" on defendant, it is "plain that `focus' alone does not trigger the need for Miranda warnings." United States v. Hall, 421 F.2d 540, 543 (2d Cir. 1969). See also Steigler v. Anderson, 496 F.2d 793 (3d Cir. 1974). "[A]bsent custodial investigation or interrogation, the Miranda warnings are not necessarily required. This is so since, except possibly in some extremely rare case which we need not attempt to hypothesize here, absent custody the element of coercion disappears." United States v. Carollo, 507 F.2d 50, 51 (5th Cir. 1975).
[6] La.Const. art. 1, § 13 (1974); La.Code Crim.P. art. 218.1 (1966), added by La.Acts 1974, Ex.Sess., No. 27, § 1.
[7] When the police ascertained that the marijuana had been discovered in his room, he was immediately placed under arrest and was given the Miranda warnings.
[8] La.R.S. 15:463 provides:

Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have.
[9] Marijuana is classified as a controlled dangerous substance in Schedule I. La.R.S. 40:964.