728 So.2d 901 (1999)
STATE of Louisiana
v.
James JOHNSON.
Nos. 98-KA-604, 98-KA-605.
Court of Appeal of Louisiana, Fifth Circuit.
January 26, 1999.
*903 Paul D. Connick, Jr., District Attorney, Ellen S. Fantaci, Terry M. Boudreaux, Gregory M. Kennedy, Ron A. Austin, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Appellee.
Arthur G. Kingsmill, Gretna, Louisiana, Attorney for Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
EDWARDS, Judge.
Defendant/appellant James Johnson appeals the trial court's denial of his Motion for New Trial. He also alleges for the first time that he received ineffective assistance of counsel. As the evidence at trial was legally sufficient to prove the facts and circumstances surrounding the crime, the trial court's denial of the Motion for New Trial was proper and must be affirmed. Furthermore, *904 the defendant was not denied effective assistance of counsel. This assignment of error is without merit and must be denied.
On June 26, 1997, the Jefferson Parish District Attorney filed two bills of information against the defendant, James Johnson, charging him with one count of possession of a weapon by a convicted felon, in violation of LSA-R.S. 14:95.1, and with one count of possession of marijuana, in violation of LSA-R.S. 40:966(C). On August 1, 1997, defendant was arraigned and pled not guilty.
On April 16, 1998, defendant was found guilty on both counts following a bench trial on the misdemeanor marijuana possession charge, held simultaneously with the jury trial on the felony weapon charge. On May 5, 1998, defendant filed a motion for new trial and/or post verdict judgment of acquittal, which the trial court denied on May 15, 1998. After delays were waived, defendant was sentenced to imprisonment for six (6) months in Jefferson Parish Prison for possession of marijuana. The trial court sentenced defendant to ten (10) years at hard labor for possession of a firearm by a convicted felon without benefit of probation, parole or suspension of sentence. On May 18, 1998, defendant filed a timely motion for appeal and a notice of intent to apply for writs. On July 1, 1998, this Court ordered that the appeal and the application for writs be consolidated for briefing and hearing in the interest of judicial economy.
It appears that in lieu of a formal writ application, defense counsel has submitted a brief assigning errors in the felony conviction as well as the misdemeanor conviction. Ordinarily, an appeal is not the proper method of review for a misdemeanor conviction. The appellate jurisdiction of this Court extends only to cases that are triable by a jury. La. Const. of 1974, art. 5 § 10; LSA-C.Cr.P. art. 912.1. A misdemeanor is not triable by a jury unless the punishment that may be imposed exceeds six months imprisonment. La. Const. of 1974, art. 1 § 17; LSA-C.Cr.P. art. 779; State v. Robinson, 93-864 (La.App. 5th Cir. 3/15/95), 653 So.2d 669. However, this Court granted defendant's Motion to Consolidate the review of both convictions because the two convictions arise out of a simultaneously conducted trial. Therefore, the apparent failure to file a document entitled "Application for Supervisory Writs" is not fatal to the defendant's appeal.
On June 13, 1997, the defendant, James H. Johnson, Jr. was arrested at 1118½ Silver Lilly Lane in Marrero, Louisiana on several charges. He was ultimately prosecuted only for violation of LSA-R.S. 14:95.1 and 40:966(C).
In the late morning hours of June 13, 1997, Agent Salvadore Castagnetta and Deputy Michael LaBorde, narcotics agents of the Jefferson Parish Sheriff's Office, drove to 1118½ Silver Lilly Lane in Marrero, Louisiana to investigate complaints of drug activity at that address. As they exited their vehicle, they observed two black males through the open front door of the house. The police approached the house, identified themselves, and told the men that they were investigating complaints of drug activity at the house.
Agent Castagnetta and Deputy LaBorde testified that the defendant stated that the residence was his father's, James Johnson, Sr., and that he was living there with his father. The police asked defendant to call his father at work. The police spoke with Mr. Johnson, Sr., and informed him that they were investigating complaints of drug activity at his house and inquired whether he would come home. After Mr. Johnson, Sr. arrived at the house and the police discussed a warrantless search with him, Mr. Johnson, Sr. gave his consent to search the entire house. Both officers testified that the defendant and his father stated that the defendant lived in the house. The officers further testified that both the defendant and his father pointed out which bedroom was the defendant's.
During the search of the bedroom said to be defendant's, police recovered a .32 caliber gun from between the mattress and box springs of the bed, a cigar box containing twelve 9 mm bullets and plastic bags, a scale, two cigar boxes, another cigar box consisting of brown paper containing marijuana seeds, six .32 caliber bullets, razor blades, and plastic bags in a larger bag. After the contraband was found in the bedroom, the defendant *905 was arrested. The police seized from defendant's person, $452.00 in various denominations from several of his pockets. No drugs or guns were found anywhere else in the house or on any other person. Neither the defendant, his father, nor the other young man present at the residence made any attempt to claim the items or state that they belonged to someone else. Nor did defendant, his father or the other young man tell the police that the bedroom did not belong to the defendant.
The defense presented the testimony of four witnesses, including the defendant. The thrust of all their testimony was that the defendant did not live at 1118½ Silver Lilly Lane.
Defendant presented an affidavit signed by Lamar Revader at the defense attorney's office five days after the defendant's arrest in which he said that he, and not the defendant, lived in the room where the drugs and gun were found. At trial, after being informed of his constitutional rights, Revader testified that he was not present the day of the search. He claimed that he paid $40.00 a month in rent, but had no rent receipts. He testified that even though he had lived in the room for several months, he had not kept any clothes in the house and had never even opened the drawers in the bedroom. Defendant presented no proof that Lamar Revader lived at 1118½ Silver Lilly Lane and he did not receive mail at that address. Revader testified that he bought the gun "on the street" on the day before the search of the Silver Lilly residence and was planning on "getting rid" of the gun the next day. He admitted that he had no receipt for the gun.
The testimony of James Johnson, Sr., defendant's father, was consistent with the police testimony regarding the consent to search. He maintained, however, that he did not tell police that the defendant lived in the house, or point out which bedroom was the defendant's. The father testified that the defendant did not have a key to the house, and that he did not know how his son got into the house, but admitted that the defendant had access to the house if the door was unlocked or if his daughter was there. Mr. Johnson, Sr., also testified that Revader lived at the house and paid $10.00 per week rent. Mr. Johnson, Sr. stated that he told the police that Revader lived there at the time of defendant's arrest, but admitted on cross-examination that he did not try to contact the district attorney's office with this information. He testified that he saw the gun that police recovered from defendant's bedroom.
Danielle Armstead, the defendant's girlfriend of six (6) years, testified that the defendant lived with his mother and only visited the father's house. She stated that at approximately 9:45 a.m. on the morning of defendant's arrest, she needed to rent a car to travel to and from work, and gave the defendant $450.00 to pay down her credit card so that she could rent the car. Armstead said she saw the defendant put the money in his pocket. The money was returned with defendant's property when she bailed the defendant out of jail.
The defendant testified that he told the police that the house was owned by his father. He denied telling police that he lived there, or that the bedroom belonged to him. He stated that he did not have any knowledge of the gun or drugs. Defendant testified that he was "passing through" that morning and saw the door to his father's house was open and went in. He said that the police came to the house and he called his father to come home. Defendant further testified that he was just "waiting around" during the search. The defendant told the jury that he knew that Revader was renting a room from his father and that after he was arrested, he told the police that the gun was Revader's. He admitted to seeing the gun and "drug paraphernalia" recovered during the search.
At trial, the parties stipulated that the drug recovered during the search was marijuana. It was also stipulated that the defendant had a prior qualifying narcotics conviction for three counts of distribution of cocaine.
The defendant asserts three assignments of error in this case. The first assignment of error is that the trial judge improperly denied his Motion for New Trial. The second assignment of error is that the defendant *906 received ineffective assistance of counsel. The third and final assignment of error is a review of the record for errors patent.
The first assignment of error is that the trial court erred in denying the defendant's Motion for New Trial. The defendant contends that the evidence was legally insufficient at trial to prove that the gun and the marijuana were in his possession, an essential element of LSA-R.S. 14:95.1 and LSA-R.S. 40:966(C). However, this contention is incorrect. The trial judge ruled properly when she denied the defendant's Motion for New Trial.
The correct vehicle for asserting defendant's argument that the state failed to prove an essential element of the crime is the motion for a post verdict judgment of acquittal or the motion for a new trial. State v. Allen, 440 So.2d 1330, 1332 (La.1983); State v. Girod, 94-853, p. 9 (La.App. 5th Cir. 3/15/98), 653 So.2d 664, 667. In the present case, defendant filed a motion for a new trial, which the trial court denied on June 6, 1996. Thus, this assignment of error is properly before this court.
The constitutional standard for testing the sufficiency of the evidence as set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Honore, 564 So.2d 345 (La.App. 5th Cir.1990), writ denied, 569 So.2d 968 (La.1990). When circumstantial evidence is used to prove the commission of a crime, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S.15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. Francis, 95-194 (La.App. 5th Cir. 11/28/95), 665 So.2d 596. Thus, the entirety of the evidence, when viewed in the light most favorable to the prosecution, must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817, 820 (La.1987).
In this case, defendant was convicted of possession of a firearm by a convicted felon. The elements which must be proven in order to convict an accused of unlawful possession of a firearm by a convicted felon are: (1) possession of a firearm, (2) conviction of an enumerated felony,[1] (3) absence of the ten-year statutory period of limitation, and (4) general intent to commit the offense. LSA-R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983).
Actual possession of a firearm is not necessary to satisfy the possession element of LSA-R.S. 14:95.1; constructive possession is sufficient to satisfy the element of possession. State v. Francis, supra. A person is in constructive possession of a thing if it is subject to his dominion and control. State v. Francis, supra. A person's dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. State v. Jackson, 97-1246 (La.App. 5th Cir. 4/13/98), 712 So.2d 934, writ denied, 98-1454 (La.10/16/98), 726 So.2d 37.
Defendant was also convicted of possession of marijuana, which is defined as follows in LSA-R.S. 40:966(C): "It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule I...." Marijuana is classified as a Schedule I drug under LSA-R.S. 40:964(C)(22). As with the law relating to the possession of a firearm, it is sufficient for a person to constructively possess a drug. According to State v. Alford, 323 So.2d 788, 790 (La.1975), "[u]nder our law, an individual need not personally possess a drug to violate a law against its illegal possession.... Likewise, for a person to constructively possess a *907 drug it must be subject to his dominion and control, and he must have knowledge of its existence." The determination of whether there is "possession" sufficient to convict depends on the particular facts of the case. State v. Trahan, 425 So.2d 1222 (La.1983).
In State v. Jackson, supra, defendant argued that the evidence was insufficient to show that he was in possession of a firearm, as is required by LSA-R.S. 14:95.1. Defendant specifically argued that the recovery of the gun from under the bed in his room was not sufficient to prove that he had constructive possession over the gun. Defendant further contended that he could not have had dominion and control over a gun simply because it was found in his bedroom. The defense also sought to show the gun could have belonged to someone other than the defendant by presenting the testimony of his mother that other relatives had recently stayed in defendant's bedroom while visiting. This Court found that the evidence was sufficient to prove the gun was found under the bed where defendant slept which indicated that defendant had easy access to the weapon.
In State v. Francis, supra, defendant challenged the sufficiency of the evidence used to convict under LSA-R.S. 14:95.1. Defendant specifically argued that the state failed to show the defendant had possession of a weapon. Defendant denied possession and ownership of the gun, claiming that it belonged to his father. Defendant later presented testimony that the gun belonged to Don Murphy who did claim ownership of the gun at trial. The jury found defendant guilty of possession of a firearm by a convicted felon. The panel in Francis concluded that the evidence presented was sufficient to sustain defendant's conviction for a violation of LSA-R.S. 14:95.1.
In this case, the parties stipulated that defendant was previously convicted of three counts of distribution of cocaine in 1993 and that the brown paper bag seized at 1118½ Silver Lilly Lane contained marijuana. Defendant argues that there was insufficient evidence to prove that he had possession of the contraband. Defendant contends that he did not have dominion and control over the contraband because the room in his father's house in which the items were found was not his bedroom.
At trial, defendant testified and presented testimony from his father, James Johnson, Sr., and his girlfriend, Danielle Armstead, that he did not live at 1118½ Silver Lilly Lane, but resided with his mother at 2733 Bayou Bouef in Marrero. Notably, defendant's mother did not testify at trial or by affidavit. Defendant also testified that the contraband in question was not his property. Further, Lamar Revader testified at trial that at the time of the search, he was renting the room in question from James Johnson, Sr. and that the seized contraband was his property. Prior to testifying, Mr. Revader was warned by the Court that he might be arrested for violating LSA-R.S. 14:95 E.
In contrast, the state presented the testimony of Agent Salvadore Castagnetta and Deputy Michael LaBorde. Agent Castagnetta testified that defendant's father indicated prior to a search of the residence that the defendant did live at 1118½ Silver Lilly Lane. Deputy LaBorde testified that both defendant and his father indicated that defendant had a bedroom at the house. Further, both officers testified that the seized contraband was found in the room which the defendant and his father indicated was defendant's bedroom. Agent Castagnetta testified that he found a gun between the mattress and box springs in James Johnson Jr.'s bedroom. He further testified that he found marijuana and drug paraphernalia in the same room. Both officers testified that neither defendant nor his father, who were both present during the search at the residence, indicated that the room in which the contraband was found was not defendant's bedroom or that the contraband in question was not defendant's property.
Faced with this conflicting testimony, the jury chose to believe the testimony of the state's witnesses over that of the defense witnesses. It is not the function of the appellate court to evaluate the credibility of the witnesses and to overturn the trial court on its factual determination of guilt. State v. Francis, supra. Such factual determinations are entitled to great weight and will not be *908 disturbed unless clearly contrary to the evidence. Id.
Viewing the evidence in the light most favorable to the prosecution, it must be determined that the state proved beyond a reasonable doubt the elements of both offenses, including constructive possession of the gun and marijuana. The evidence presented was sufficient to sustain defendant's convictions for violation of LSA-R.S. 14:95.1 and 40:966(C).
The second assignment of error is that the defendant was not provided effective assistance of counsel. The defendant contends that he was denied effective assistance of counsel because his trial counsel failed to file a motion to suppress his statement, a motion to sever the offenses, and failed to make timely objections at trial to preserve issues for appeal. The state responds that the record is insufficient to review the defendant's claims and should be raised by the application for post conviction relief. Alternatively, the state responds that the record does not support the defendant's allegations of ineffective assistance of counsel.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355, 359 (La.1987); State v. Campbell, 97-365 (La.App. 5th Cir. 11/25/97), 703 So.2d 1358, 1360. It is well settled, however, that where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La.1993); State v. Campbell, supra.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042, p. 9 (La.App. 5th Cir. 4/26/94), 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450; 94-1361 (La.11/4/94), 644 So.2d 1055. To show "prejudice" as required in order to establish ineffective assistance of counsel, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Soler, supra. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983). Because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must be specific to the facts of the case. State v. Peart, supra.
As the United States Supreme Court stated in Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citations omitted). (Emphasis added).
The defendant first complains that trial counsel was deficient in failing to file a motion to suppress an inculpatory statement made by defendant to the narcotics agents at the Silver Lilly Lane residence. When the officers arrived at the residence, they asked the defendant if he lived there, and he replied affirmatively. The defendant argues that his counsel should have filed a motion to *909 suppress this inculpatory statement because he had not been advised of his constitutional rights prior to telling the narcotics agents that he lived at the residence.
The record reflects that trial counsel did not file a motion to suppress the defendant's confession. For purposes of an ineffective assistance of counsel claim, the filing of pretrial motions is squarely within the ambit of the attorney's trial strategy, and counsel is not required to engage in efforts of futility. State v. Pendelton, 96-367, p. 23 (La.App. 5th Cir. 5/28/97), 696 So.2d 144, 156, writ denied, 97-1714 (La.12/19/97), 706 So.2d 450; State v. Morris, 98-236, p. 9 (La.App. 5th Cir. 9/16/98), 719 So.2d 1076. Here, it does not appear that trial counsel was deficient by not filing a motion to suppress defendant's statement because it does not appear the statement would have been suppressed.
Before a confession or an inculpatory statement is introduced at trial, the state must prove that the declarant was advised of his or her Miranda rights prior to custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); La. Const. art. I § 13; State v. Robertson, 97-0177, p. 25 (La.3/4/98), 712 So.2d 8, 30; State v. Bentley, 96-795, p. 8 (La.App. 5th Cir. 3/25/97), 692 So.2d 1207, 1210. State v. Castillo, 389 So.2d 1307, 1310 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004; State v. Pardon, 97-248, p. 15 (La.App. 5th Cir. 10/15/97), 703 So.2d 50, 62, writ denied, 97-2892 (La.3/20/98), 715 So.2d 1207. However, the safeguards of Miranda are only applicable when a person is the subject of a custodial interrogation. State v. Pomeroy, 97-1258, p. 5 (La.App. 5th Cir. 5/13/98), 713 So.2d 642, 645.
Our courts have held that custodial interrogation includes situations that fall short of an actual arrest including when the accused is questioned by the police in a setting that indicates that he or she has been deprived of his or her freedom in any significant way. State v. Menne, 380 So.2d 14, 17 (La.1980), cert. denied, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980); State v. Foret, 96-281, p. 29 (La.App. 5th Cir. 11/14/96), 685 So.2d 210, 222. Whether an accused has been subjected to a custodial interrogation is made on a case by case basis, and the factors include:
1. Whether there was probable cause to arrest prior to questioning;
2. Whether the statements and actions of the police indicate an intent to hold or restrain the accused;
3. Whether the accused reasonably believed he was restrained, and
4. The extent to which the investigation had focused on the accused.
State v. Roach, 322 So.2d 222, 227 (La. 1975); State v. Pardon, 703 So.2d at 62-63.
In State v. Roach, supra, a case factually similar to the present case, the Louisiana Supreme Court held that the defendant was not in custody when he told officers where his bedroom was located when the officers were executing a search of the residence. The officers had a search warrant based on information that marijuana and hashish were being sold at the residence. The house was owned by someone other than the defendant, but the defendant was the only person present at the residence when the officer arrived to execute the warrant. During the search, one of the officers discovered what appeared to marijuana seeds and "gleanings" in one of the rooms. Defendant was asked where he slept, and he told the officers the location of his bedroom. After determining that the contraband had been found in the defendant's bedroom, the defendant was arrested and advised of his Miranda rights. State v. Roach, 322 So.2d at 224. The Court applied the four factors listed above and found that the defendant was not subjected to custodial interrogation such that Miranda warnings were required. Id. at 228.
It likewise appears in the instant case that the defendant was not subjected to a custodial interrogation. First, based on the officers' trial testimony, they did not have probable cause to arrest the defendant when they arrived at the residence. Rather, Deputy LaBorde testified that they went to the Silver Lilly residence to investigate the neighbors' complaints about drug activity at the residence. It was not until the contraband was discovered in the bedroom that the *910 officers had probable cause to arrest the defendant. Second, the actions of the police did not indicate an intent to restrain the defendant. The defendant was not handcuffed or otherwise restrained before or during the search. With regard to the third factor, the defendant testified that he was just "waiting around" while the officers executed the search.
Finally, it does not appear that the investigation focused on the defendant. Based on the trial testimony, it appears that the focus of the investigation was on the narcotics activity conducted at the residence, rather than on the defendant. Deputy LaBorde testified that neighbors had complained that two young black males were selling crack cocaine at the residence, but did not name the defendant or any other person. On cross-examination, Deputy LaBorde testified that the main focus was not on the defendant and that he spoke to both the defendant and the other young man present at the residence. Under these circumstances, it does not appear that the defendant was in custody, and the officers were not required to advise the defendant of his Miranda rights. Therefore, trial counsel's performance was not deficient by not filing a motion to suppress the statement.
Defendant argues that his trial counsel was ineffective in failing to demand separate trials for the misdemeanor of possession of marijuana and the felony of possession of a firearm by a convicted felon. The state responds that the decision to sever rests within the discretion of the trial court.
Prior to trial, the parties agreed that trial on the two matters would occur simultaneously and that a jury would hear the evidence on the felony charge while the trial judge would rule on the misdemeanor charge. The defendant contends that the jury was prejudiced because the jury heard evidence that defendant possessed marijuana, which was otherwise inadmissible in the felony case. The state responds that the trial judge has discretion to sever the offenses.
In this case, the law of severance is not applicable because joinder of offenses occurs when two or more offenses are charged in the same bill of indictment or information. LSA-C.Cr.P. art. 493. Here, the two offenses were charged in separate bills of information, and thus, were not "joined." On the other hand, consolidation occurs when offenses charged by separate bills of indictment or information are tried together in one trial. LSA-C.Cr.P. art. 709. In this case, consolidation did not occur because there were actually two trials, a bench trial and a jury trial, that took place simultaneously.
In the present case, we find that trial counsel's decision to proceed to trial on both cases simultaneously was trial strategy. As stated above in Strickland, supra, "the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case." Id. at 689, 104 S.Ct. 2052.
Even though trial counsel agreed to simultaneous trials, this did not prejudice the defendant because the evidence about the marijuana was admissible as "res gestae" at the felony trial. While our Code of Evidence prohibits the use of evidence of other crimes or wrongful acts to prove the character of a person in order to show that he acted in conformity therewith, such evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. art. 404 B(1). Formerly known as "res gestae," evidence that constitutes an integral part of the crime is admissible without prior notice to the defense. State v. Brown, 95-124, p. 5 (La.App. 5th Cir. 5/30/95), 656 So.2d 1070, 1074-1075.
The Louisiana Supreme Court in State v. Brewington, 601 So.2d 656, 656-657 (La. 1992), stated that:
This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La.1976). In such cases, the purpose served by admission of other *911 crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed.1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence Sec. 218 (3d ed.1940). State v. Haarala, 398 So.2d 1093, 1097 (La.1981). (Emphasis added).
In the present case, the officers testified that the marijuana was recovered simultaneously with the firearm. The evidence about marijuana was not offered for the purpose of depicting defendant as a bad person but merely to "complete the story of the crime on trial by proving its immediate context of happenings near in time and place." State v. Brewington, supra. Therefore, in light of the strong evidence against the defendant, any error committed in the admission of the prior bad acts was harmless error.
Defendant next argues that his counsel was ineffective because he failed to object when the state announced that the defendant had been convicted of "three counts of distribution of cocaine" or to move for a mistrial when the Court reiterated the conviction. Defendant concedes that one of the distribution convictions was necessary to prove the state's case for LSA-R.S. 14:95.1. However, defendant urges that his trial counsel permitted the jury to hear about two additional convictions and was thus ineffective. The state responds that the reference to defendant's prior convictions was made in the context of a stipulation necessary to prove an element of LSA-R.S. 14:95.1, thus it was admissible and not prejudicial.
Generally, evidence of other acts of misconduct is inadmissible. LSA-C.E. art. 404(B)(1); State v. Prieur, 277 So.2d 126 (La.1973). However, when evidence of other crimes or bad acts tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain exceptions to this rule. State v. Silguero, 608 So.2d 627 (La.1992); State v. Pardon, supra at 56. Here, evidence of defendant's conviction for distribution of cocaine has independent relevance because it satisfies an element of LSA-R.S. 14:95.1, previous felony conviction within ten years.
To prove this element, the state offered a certified copy of the defendant's convictions for three counts of distribution of cocaine into evidence. Also, the parties stipulated that "the defendant, was one and the same person who has a previous felony conviction, in case number 93-6573, for 3 counts of distribution of cocaine." It appears that trial counsel should have stipulated to only one of the three counts. The test, however, is whether defense counsel's performance was deficient and whether the deficiency prejudiced defendant. Strickland, supra.
The wrongful admission of other crimes evidence is subject to the harmless error rule. State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94. This Court has applied the harmless error analysis of other crimes evidence in State v. Thomas, 96-464 (La.App. 5th Cir. 11/14/96), 685 So.2d 261 and in State v. Pittman, 95-382 (La.App. 5th Cir. 10/1/96), 683 So.2d 748. The proper analysis for determining harmless error is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." State v. Phillips, 94-673, p. 15 (La.App. 5th Cir. 3/1/95), 659 So.2d 785, 792; Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Code, 627 So.2d 1373 (La. 1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). It is our finding that the verdict was not attributable to any error in allowing the jury to hear of two other convictions for distribution of cocaine, and thus, was harmless error.
The defendant next contends that his counsel was ineffective because he did not "meaningfully" *912 object to the admission of the scale, the razor blades, cigar boxes, and baggies. Defendant concedes that his counsel objected to these items, but asserts that his counsel was ineffective because he did not object to the seized items as inadmissible other crimes evidence. The state responds that trial counsel was not ineffective because the objection was sufficiently specific.
According to LSA-C.Cr.P. art. 841, a party must make a contemporaneous objection to preserve an issue for appeal:
Art. 841. Bill of exceptions unnecessary; objections required
A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
The Louisiana Supreme Court has held that there are no "magic words" necessary for counsel's remarks to constitute an objection. State v. Shoemaker, 500 So.2d 385, 388 (La. 1987). In State v. Vanderpool, 493 So.2d 574, 575 (La.1986), the Court recognized that "[o]ur law is ... settled that an objection need not be raised by incantation." However, our law also recognizes that a new basis for an objection may not be raised for the first time on appeal. State v. Burdgess, 434 So.2d 1062, 1067 (La.1983); State v. Winfrey, 97-427, p. 23 (La.App. 5th Cir. 10/28/97), 703 So.2d 63, 77, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481. Apparently, the thrust of the defendant's argument is that he is now precluded from raising on appeal the improper admission of this evidence as inadmissible crimes.
In this case, trial counsel objected to the admission of the scale, the razor blades, cigar boxes, and baggies on the ground that these items could not be linked to the defendant, since the defendant claimed the room did not belong to him. The trial judge overruled the defendant's objection, and stated that issue of whether the room belonged to the defendant was for the jury to decide. Because no "magic words" are required to make an objection and preserve an issue for appellate review, and since counsel did object, counsel was not deficient in his performance.
Defendant next contends that his counsel was ineffective because he did not object when Agent Castagnetta and Deputy LaBorde testified that there had been numerous complaints of drug activity at the Silver Lilly Lane residence. Defendant urges that his counsel should have objected to this testimony as inadmissible hearsay.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. arts. 801(A)(1) & 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. LSA-C.E. art. 802; State v. Soler, supra at 1078. However, a police officer may in his testimony refer to statements made to him by others when these statements are admitted not to prove the truth of the statements but to explain the sequence of events leading to the defendant's arrest. State v. Watson, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).
Citing State v. Watson, supra, this Court in State v. Soler, supra at 1078, held that a police officer's testimony about what the victim's mother told him about the defendant's abuse of herself and her son was properly admitted to explain the sequence of events leading up to the defendant's arrest. Similarly, in State v. Williams, 591 So.2d 404, 406 (La.App. 4th Cir.1991), the court held that a police officer's testimony as to what he had been told by third parties regarding a robbery was not inadmissible hearsay, but was introductory and explanatory as to the arrest of the defendant.
In contrast, the Louisiana Supreme Court held in State v. Wille, 559 So.2d 1321, 1329 (La.1990), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992), that the investigating FBI agent's testimony regarding the interviews with the witnesses to the murder with which the defendant was subsequently *913 charged was inadmissible hearsay. Id. at 1332. In Wille, the defendant was convicted of first-degree murder and sentenced to death. On appeal, he contended that the trial court improperly permitted an FBI agent to testify about the substance of interviews conducted with witnesses to the murder. These witnesses did not testify at the trial. At trial, the agent had testified that the interviews with the witnesses focused the investigation upon defendant and that they "`became certain that John Willie [defendant] was, was our prime suspect.'" Wille, Id. at 1328. The Louisiana Supreme Court distinguished other cases like State v. Watson, supra, where such testimony was admissible to explain the sequence of events leading to the arrest of the defendant because in those cases, the testimony "did not significantly connect the defendant with the crime." Id. at 1330.[2]
In the present case, it appears that the officers' testimony regarding the complaints of narcotics activity conducted at the Silver Lilly Lane residence did not significantly connect the defendant with narcotics activity, but explained the sequence of events leading to the defendant's arrest. Therefore, the instant case is more similar to State v. Watson, State v. Soler, and State v. Williams, supra, and the officers' testimony in this regard was not inadmissible hearsay.
Nevertheless, the test is whether counsel's performance was deficient and whether the defendant was prejudiced by that deficiency. Strickland, supra. Hearsay is subject to the harmless error rule. State v. Wille, supra at 1332. The proper analysis for determining harmless error is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." State v. Phillips, 94-673, p. 15 (La.App. 5th Cir. 3/1/95), 659 So.2d 785, 792; Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Code, 627 So.2d 1373 (La. 1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). Considering the foregoing, it appears that any error resulting from the inadmissible testimony was harmless and thus the defendant has not shown prejudice.
Defendant next argues that trial counsel's failure to object to inadmissible hearsay testimony from Colonel Passalaqua denied defendant effective representation. The state concedes that the testimony in question was inadmissible hearsay yet responds that the admission of the evidence was not prejudicial.
At trial, Agent Castagnetta testified that the gun was turned over to the Crime Scene Division technician at the scene, who took it to the lab where it was test fired and retained. Colonel Passalaqua, head of Jefferson Parish Sheriff's Office Crime Scene Division and the Property and Evidence Division, testified to the file record reflecting the chain of custody of the gun, item number F1298197, once it was picked up at the scene by Carl Burg, the crime scene technician. He testified the record showed that Burg turned the weapon over to Sergeant Waguespack, evidence custodian of the Crime Scene Division. Waguespack turned it over to Edgar Dunn, the forensic officer who test fired the gun. The gun was in Dunn's possession last and could not be found in time for trial. On cross-examination, Col. Passalaqua stated he had no personal knowledge of the weapon.
As noted above, hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted and is inadmissible except as otherwise provided law. LSA-C.E. arts. 801 and 802; State v. Soler, supra, 636 So.2d at 1078. The "failure to object to the introduction of damaging, obviously hearsay testimony presents a textbook unprofessional error." State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, 1293, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996).
Even though the testimony is inadmissible hearsay as the state concedes, the *914 defendant has failed to prove that trial counsel's failure to object was prejudicial. In order to demonstrate prejudice as required to establish ineffective assistance of counsel, the defendant must show that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland, supra at 687, 104 S.Ct. 2052. Here, the defendant has failed to make the necessary showing of prejudice because any error occasioned by Colonel Passalaqua's testimony regarding the gun was harmless.
Inadmissible hearsay that is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. State v. Pratt, 95-762, p. 5 (La.App. 5th Cir. 2/27/96), 671 So.2d 21, 24. Both the defendant and his father testified that they saw the officers recover a gun after searching the bedroom. Therefore, Colonel Passalaqua's testimony regarding the gun's existence was merely cumulative of other testimony adduced at trial and any error in the admission of Colonel Passalaqua's testimony was harmless.
While trial counsel's performance may have been deficient in certain aspects as noted above, the defendant was not prejudiced by that deficiency. The defendant has not met his burden of proof to support a claim of ineffective assistance of counsel.
The defendant has requested an error patent review, and the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La. App. 5th Cir.1990); and State v. Godejohn, 425 So.2d 750 (La.1983).
In its error patent review, the state notes that while the transcript reflects that the trial judge properly advised the defendant of the prescriptive period for post-conviction relief, the commitment does not so reflect. According to LSA-C.Cr.P. art. 930.8(C), "[a]t the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief." The record reflects that the trial judge complied with the mandate of Article 930.8.
It is noted that the trial court failed to impose a mandatory fine or sentence without benefits as required under LSA-R.S. 14:95.1. Therefore, the trial court imposed an illegally lenient sentence. However, the defendant alone has appealed and the state failed to object at trial and has not raised the issue in its brief. The appellate court will not amend or set aside an illegally lenient sentence on its own motion when the defendant alone has appealed and the prosecutor has not sought review of the sentence. State v. Fraser, 484 So.2d 122 (La.1986); State v. Bradford, 95-929 (La.App. 5th Cir. 6/25/96), 676 So.2d 1108.
In summary, it is the conclusion of this court that the conviction and sentencing of the defendant was proper. The trial court did not err in denying the defendant's Motion for New Trial. Furthermore, while the actions of trial counsel may have been deficient in certain aspects, his actions were not prejudicial to his client's defense. The defendant has not met his burden of proof to support a claim of ineffectiveness of counsel. Therefore, the ruling of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The parties stipulated that the defendant was convicted of three counts of distribution of cocaine, which is an enumerated felony under the statute. LSA-R.S. 14:95.1
[2] The Wille court nevertheless concluded that the error in admitting the agent's inadmissible hearsay testimony was harmless. Id., at 1333.