375 So.2d 924 (1979)
STATE of Louisiana
v.
Robert L. KIMBLE.
No. 63765.
Supreme Court of Louisiana.
September 4, 1979.
*925 Glynn D. Roberts, Rayville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Lowen B. Loftin, Dist. Atty., William R. Coenen, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Chief Justice.
Defendant, Robert L. Kimble, was charged by bill of information with the burglary of a pharmacy in Delhi, Louisiana, a violation of Article 62.1 of the Criminal Code. Following trial, a jury of twelve convicted defendant of the crime charged. He was then sentenced to imprisonment at hard labor for five years, without benefit of parole and with credit for time served.
Seven assignments of error were lodged on behalf of the defendant, five have been urged on this appeal.
Defendant Kimble, Cecil Miller, Danny Spruell and Harold Holman met at Kimble's trailer in Vicksburg, Mississippi, on February 20, 1978. They agreed to try to find a pharmacy or doctor's office they could burglarize for narcotic drugs which they could sell. A number of possibilities were discussed. To ascertain the feasibility of this plan they drove to several places around Vicksburg checking drugstores and doctors' offices. Finally they surveyed the E. W. Thompson Drug Store across the Mississippi River in Delhi, Louisiana. Being familiar with the town and the Thompson Drug Store, Kimble pointed out to Miller, Spruell and Holman the location of the police station, explained how to break into the drugstore and where the drugs were normally kept. He then sent two of his associates *926 into the drugstore to get a close look at the layout. The quartet then returned to Vicksburg where they purchased burglary tools.
In the late evening of that same day or the early morning hours of February 21, 1978, Miller and Holman returned to Delhi and burglarized the E. W. Thompson Drug Store according to Kimble's plan. Among the items stolen were a wide assortment of narcotic drugs, money, a camera and other merchandise.
Miller and Holman returned to Miller's Vicksburg apartment where the stolen goods were deposited. Later that morning Kimble arrived at the apartment and explained how they could scrape the lot numbers from the drug containers to avoid identification. He also took a portion of the drugs as his share of the stolen goods.
Assignment 1: On February 24, 1978 on information obtained from a reliable informant, a warrant was obtained to search the apartment of Miller at "1124 South Street, Apartment 4, Vicksburg, Mississippi, 39180 together with all approaches and appurtenances thereto." That same day a warrant was obtained to search Kimble's trailer house located in a trailer park on Old Highway 80 East, Vicksburg, Mississippi, giving particulars of its location and a description, "together with all approaches and appurtenances thereto."
Execution of the search warrants followed that same day. As a result a quantity of the stolen drugs was found in the basement of the Miller apartment, at 3:45 that afternoon. In executing the warrant to search Kimble's trailer, at 7:30 that evening the police established a surveillance of the area surrounding the trailer. During this time Kimble and Spruell arrived in an automobile and stopped at Kimble's trailer. Spruell then removed a brown bag from the car trunk and entered Kimble's trailer. Shortly thereafter he came out of the back door and deposited the brown bag under the steps of a vacant trailer next to Kimble's. These actions were observed by the officers conducting the surveillance.
Two of the officers then entered the Kimble trailer to search for the stolen drugs and other goods, while a third officer walked directly to the steps where the brown bag had been placed by Spruell. The officer took possession of the bag, which was found to contain drugs from the burglarized drugstore. The owner of the trailer became aware of what was going on, and he came to the vacant trailer and opened it to allow the officers to search its interior for the stolen property. None was found in the vacant trailer. A search of Kimble's trailer also resulted in the seizure of burglary tools and stolen drugs from the Thompson drugstore.
Prior to trial defendant filed motions to suppress as evidence the objects obtained as a result of the seizures.

The basement
It is the defense position that the search warrant did not describe the basement of Miller's apartment and therefore the search and seizure of that area was without a warrant. As a warrantless search, it is contended, the search and seizure were unreasonable and in violation of the proscriptions contained in the Fourth Amendment to the United States Constitution and Section 5 of Article I of the Louisiana Constitution.
The basement where the drugs were found is located directly under Miller's apartment, and Miller testified that he had access to and used the basement in connection with his occupancy of the apartment. The basement was accessible through a door located inside Miller's apartment and through a door beneath the steps outside. It was through this latter door that the officers gained access to the basement.
Under these facts it is evident that the basement was an adjunct and accessory of the apartment and annexed to it. As such it was an appurtenance of the apartment as described in the search warrant. Definition of appurtenance in Webster and Black dictionaries will verify this conclusion.
In deciding State v. Roach, 322 So.2d 222 (La.1975), this Court unanimously held:

*927 "In any event, a search warrant authorizing the search of the `premises' at a stated address must reasonably be interpreted to permit a search of the dwelling house proper, the garage, and any other outbuildings within close proximity of the house proper that one normally associates with and includes within the word `house' or `premises'." 322 So.2d 226
Thus the search warrant properly designated the place to be searched and a search of the basement was authorized when appurtenances to the apartment were authorized to be searched by the warrant. La. Code Crim.Pro. art. 162.

The vacant trailer
A like contention is made that the seizure of the brown bag beneath the steps of the vacant trailer next to Kimble's trailer was not authorized by the warrant, because the vacant trailer was not designated as the place to be searched in the warrant.
Again the State contends to the contrary, arguing that the close proximity of the vacant trailer was within the meaning and intendment of the warrant authorizing the search of Kimble's trailer "together with all approaches and appurtenances thereto."
The search of the basement to Miller's apartment occurred about 3:45 on the afternoon of February 24, 1978. The information which supported probable cause for the issuance of the warrant had been confirmed by the search of the basement. With this knowledge the officers proceeded to Kimble's trailer and established the surveillance which assured them that the brown bag secreted beneath the steps of the vacant trailer in all probability contained drugs obtained in the pharmacy burglary. And, even if the warrant did not authorize the seizure of the brown bag, the officers had probable cause to do so. In addition, although seizure of the bag under the steps of the vacant trailer was not initially with the permission of the owner, the owner did subsequently approve the seizure and allowed the officers to search the interior of the vacant trailer.
If the State's contention that the clause "together with all approaches and appurtenances thereto" included the steps of the vacant trailer was not well-founded, the fact that the officers had probable cause to believe that Spruell was secreting stolen drugs and the approval of the seizure of the bag by the owner of the vacant trailer do combine to meet the test of reasonableness established by the Fourth Amendment. Kimble and Spruell had no right to an expectation of privacy beneath the steps of the vacant trailer. The trailer park owner was the party entitled to that right and he waived it in favor of the police.
In State v. Williams, 353 So.2d 1299 (La. 1978), this Court upheld an after-the-fact consent to a search and seizure, saying:
"Therefore, even if the initial entry into defendant's house and impoundment of his automobile resulted in a warrantless search or seizure, the subsequent voluntary written consent to search a second time amounted to a waiver of the warrant requirement rendering both the first and second search and seizure valid. Consequently, the ruling of the trial judge denying the motion to suppress was correct."
Thus neither Spruell nor Kimble had a right to demand that the police obtain a warrant to search the vacant trailer which did not belong to them and in which they had no expectation of privacy. In any event, the after-the-fact consent by the owner to search the vacant trailer was a waiver of the warrant requirement.

Assignments 3 and 5:
During the course of the trial Spruell testified that on February 20, 1978, while they were planning the burglaries and looking into whether certain drugstores and doctors' offices were suitable targets for their plan, Kimble mentioned to them that a drugstore in Rolling Fork, Mississippi, was a likely place. Spruell said that during this same time Miller and Holman were supposed to take Kimble and him to Monroe to look for a drugstore which Kimble *928 said would be easy to break into. Spruell also testified that Kimble wanted ten percent of the money realized from the sale of the stolen drugs. Miller then testified. He said that drugstores had large stocks of drugs, and money was to be made by their plan. Later Miller testified that Kimble was of the opinion that the drugstore in Rolling Fork was too dangerous because of its burglary alarm system. He said he and Kimble stopped in Cary, Mississippi, to look over a doctor's office.
In each instance defense counsel objected to this testimony and moved for a mistrial. He contends that the testimony was evidence of other crimes, which was inadmissible.
There are two reasons why the cited testimony was admissible.
First, all of these references were part of a discussion associated with a plan of action which culminated in the burglary of the Thompson Drug Store in Delhi. Remarks concerning other possible sites being considered and surveyed before making a selection of the Delhi site were disclosures of the ongoing preparation for the ultimate burglary. As such these discussions and references to the surveys of other possible sites were part of the res gestae. They occurred on February 20, 1978, a few short hours before the Delhi burglary. They were circumstances and declarations which were "necessary incidents of the criminal act or immediate concomitants of it, or [which] form[ed] in conjunction with it one continuous transaction." La.Rev.Stat. 15:448.
Although the testimony of Spruell and Miller, which the defense finds objectionable, did refer to plans for other crimes, the conversations and incidents testified to were so closely related to the consummated burglary that it formed part of the res gestae, admissible as such.
Second, the planning of the burglary and Kimble's requirement that he share in the gains, together with the actual burglary, are evidence of his participation in a conspiracy to commit a crime and of acts done in furtherance thereof. La.Rev.Stat. 14:26. Because of this Kimble was a principal as defined by Article 24 of the Criminal Code:
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
Although Kimble was charged with the burglary of the Thompson Drug Store, the evidence did not establish that he actually entered and committed a theft. Instead, the evidence was that he was the "master mind" of the crime, planning it in every detail, instructing the actual participants in its execution and sharing in the loot. Under these circumstances evidence of a conspiracy is admissible under Section 455 of Title 15 of the Revised Statutes, which provides:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his co-defendant. But to have this effect a prima facie case of conspiracy must have been established."
A similar argument is made by the defense in connection with Spruell's mention in his testimony that Kimble was on Federal parole. Miller also mentioned this fact in his testimony later.
Spruell's reference to Kimble's Federal parole was in explanation of a question propounded by defense counsel on cross-examination. It was a relevant and pertinent explanation made necessary by the question of defense counsel. The State cannot be charged with Spruell's reply implying that Kimble had committed a federal crime. Nor can the defense counsel claim reversible error when he elicited evidence considered prejudicial to the accused. In *929 addition, the trial judge admonished the jury to disregard the remarks of the witness. La.Code Crim.Pro. art. 771. There was no error in his ruling denying a defense motion for a mistrial immediately thereafter.
When Miller testified the prosecutor asked him why Kimble did not join him in the actual burglary of the drugstore, Miller replied that Kimble decided he "deserved a cut" for planning the burglary, implying that the others should carry out the caper, and furthermore he was "already on Federal parole."
Reference to the Federal parole was an unsolicited response, and the State cannot be charged with this defendant's remark. An error mandating mistrial is not indicated here because Miller is not "the judge, district attorney, or a court official" as Article 770 of the Code of Criminal Procedure requires. When a witness' testimony is unsolicited and unresponsive, it is not chargeable against the State. State v. Lewis, 353 So.2d 703 (La.1977); State v. Hutto, 349 So.2d 318 (La.1977).
When the defense moved for a mistrial the trial judge denied the motion and admonished the jury to disregard the remark. In view of the fact that the jury had previously heard the same statement from Spruell, there is little likelihood that defendant was prejudiced by repetition of the remark.
There is no merit to these assignments.
Assignment 6: Prior to trial a motion for discovery was filed on behalf of defendant requesting: "That defendant be permitted and authorized to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or inculpatory statements made by co-defendants and intended for use at the trial." Several days later on August 30, 1978 the State replied: "No co-defendants were charged." At the time of this response the State asserts later in brief that it had no intention of using statements made by Miller at the trial. Miller was not a codefendant at that time or subsequently. Use of his statements was unnecessary because he was a State witness at the trial and was testifying to the facts of the offense.
Then, at the trial, the defense elicited from Miller the fact that prior to trial he was incarcerated in the Warren County Jail in Mississippi with Kimble. Miller was twenty-one years of age and afraid of Kimble, so he told a deputy sheriff there at Kimble's urging that Kimble had nothing to do with the burglary. He was then asked by defense counsel if he signed a statement saying Kimble didn't have anything to do with it. Thereafter he was presented the statement by defense counsel and asked to read it to the jury. He then read the statement which completely exonerated Kimble of any knowledge of or participation in the burglary.
Miller testified that he made the statement exonerating Kimble "to keep somebody from messing with me while I was locked up with them in the Warren County Jail." The statement was introduced in evidence. Questioning by the defense was aimed at establishing the fact that Miller's previous statement was contrary to his testimony at trial in which he implicated Kimble in the crime, giving all of the details. Defense counsel also asked Miller if he signed a statement for Jack Lott, an investigator for the Louisiana State Police. Miller replied that he did make such a statement.
On examination by the State Miller repudiated the statement exonerating Kimble. He also detailed the coercion employed by Kimble to induce him to sign the statement exonerating Kimble of involvement in the burglary.
Over defense objection the prosecutor then began to question Miller about the statement he made for Jack Lott. Miller acknowledged that he made the statement, gave the time and place and recognized his signature. When the prosecutor asked for permission to have Miller read the statement to the jury, defense counsel again objected that the statement had not been furnished in response to the request for discovery or in response to his motion for bill of particulars.
*930 When the trial judge inquired of the prosecutor whether the defense motion for particulars requested a copy of the statement, the prosecutor replied, "He asked for any statement of a coconspirator. I told him that we had no coconspirator charged." Whereupon, the defense objection was sustained, and the judge instructed the jury to disregard reference to the Lott statement. Following this, defendant moved for a mistrial and it was denied.
It is the defense contention that failure of the State to disclose Miller's statement to Lott in response to the interrogatories in the defense motion for discovery and the subsequent reference to that statement at trial was prejudicial.
There was no obligation on the part of the State to disclose Miller's statement to Lott in response to the discovery interrogatory referred to. The request was for statements of codefendants and Miller was not a codefendant.
Furthermore, the reference to the statement given to Lott was first brought out by the defense and the prosecutor was seeking to question Miller concerning that statement. However, the trial judge refused to permit the statement to be read to the jury because the State failed to acknowledge its existence in response to the defense motion for particulars.
The scant reference to the fact that Miller did sign a statement at a certain time and place for Lott the investigator does no more with respect to the content of the statement than defense counsel did when he opened the door to this subject. It should also be noted that Miller acknowledged at the trial that his testimony was inconsistent with and contrary to the pretrial statement he made exonerating Kimble. If it was the plan of the defense to obtain a copy of Miller's statement to establish inconsistencies with his statement exonerating Kimble to destroy his credibility, such a result was obtained through Miller's own testimony acknowledging the inconsistencies.
There is no merit to this assignment.
Assignment 7: The defense contends that the trial judge erroneously overruled its objection to the introduction into evidence of the drugs which were seized. The contention is based upon the premise that the statute under which Kimble was being prosecuted requires unauthorized entry of a structure which is used in whole or in part for the sale, storage and/or disposing of controlled dangerous substances with intent to commit theft of any drug which is defined as a controlled dangerous substance.
According to the defense there was no positive proof that the drugs introduced into evidence were controlled dangerous substances, and no expert was called to testify to that effect.
However, the owner of the drugstore had been a registered, licensed pharmacist for twenty-four years. He testified in detail about the handling of drugs in his store. He exhibited a thorough knowledge of controlled dangerous substances as defined by law. He identified the drugs stolen as controlled dangerous substances. The drugs introduced into evidence were identified by him as those stolen. While his identification was visual it was based upon years of experience and familiarity with dispensing drugs.
There is no legal requirement that the classification of the stolen drugs as controlled dangerous substances be established by an expert in laboratory analysis as the defense contends. Positive proof is not the criteria for establishing facts in all instances.
An issue of fact bearing upon guilt or innocence of the accused is presented to this Court by this assignment. On appeal, review by this Court is limited by the Constitution to questions of law. La. Const. art. V, § 5. The question of the sufficiency of evidence, as in this case, presents an issue of fact and not of law. So long as there is "some" evidence of the essential elements of the offense this Court cannot disturb the jury verdict. State v. Banks, 362 So.2d 540 (La.1978); State v. Williams, 362 So.2d 530 (La.1978). There is, therefore, no merit to this assignment.
*931 For the reasons assigned, the conviction and sentence are affirmed.
DIXON and CALOGERO, JJ., concur.
DENNIS, J., concurs and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur, disagreeing in part with the majority's treatment of Assignment of Error No. 6. I believe that Miller was a "co-defendant" within the meaning of the statute and the state was obliged to allow the defendant to inspect Miller's statement when it formed an intention to use the statement at trial. There was no showing of prejudice to the defense in this case, however, because the state did not decide to use the statement before Miller took the stand, and there was no showing that defendant's lack of an inspection of the statement during trial was prejudicial.