481 So.2d 659 (1985)
STATE of Louisiana
v.
Francis SERIGNY.
No. 85 KA 0388.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
Writ Denied March 21, 1986.
*660 Louis Thad Toups, Asst. Dist. Atty., Thibodaux, for plaintiff-appellee State of La.
Clyde C. Caillouet, Jr., Thibodaux, for defendant-appellant Francis Serigny.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
Francis J. Serigny (defendant) was charged by bill of information with the attempted second degree murder of Jack Jambon in violation of LSA-R.S. 14:27 and 14:30.1. He pled not guilty and, after trial by jury, was convicted as charged. He was sentenced to fifty years at hard labor. The district attorney later filed a multiple offender bill and a hearing was held, at which he was found to be a multiple offender. Defendant was resentenced as a multiple offender, which made him ineligible for diminution of sentence based on good behavior. (LSA-R.S. 15:571.3).
Defendant has appealed and urges eleven assignments of error. Assignments of error numbers one, six, seven, and ten have not been briefed and are, therefore, considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.
In the early morning hours of January 12, 1983, Jack Jambon was shot several times as he was leaving his business establishment near the town of Golden Meadow, Louisiana. Following leads received during the investigation, the Lafourche Parish Sheriff's Office arrested Ted Weatherall and charged him with the attempted second *661 degree murder. After his arrest, Weatherall gave a voluntary statement implicating the defendant. Cooperating with the Lafourche Parish Sheriff's Office, Weatherall agreed to wear a concealed body-bug (electronic transmitting device) in an attempt to obtain a tape recorded statement from the defendant.
On November 30, 1983, Weatherall (wearing the body-bug) approached the defendant and began a conversation. During the course of the conversation, which was recorded by Lafourche Parish Sheriff's deputies, the defendant made certain inculpatory statements concerning the shooting of Jack Jambon on January 12, 1983. During the latter part of this conversation, defendant was arrested.
ASSIGNMENT OF ERROR NUMBER TWO:
Defendant contends that the assistant district attorney made an improper and highly prejudicial reference to first degree murder on voir dire.
The record reflects that the following dialogue took place:
BY THE STATE:
Okay. Thank you.
Now first degree murder is defined as
BY MR. CAILLOUET:
Objection, Your Honor. I am going to object to Mr. Toups' statement just now.
BY THE STATE:
I'm sorry.
BY MR. CAILLOUET:
It's totally
BY THE STATE:
I should have said second.
BY MR. CAILLOUET:
But you didn't.
BY THE COURT:
He was going to catch himself in ten seconds.
BY THE STATE:
Second degree murder is defined as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm....
The reference to first degree murder was clearly unintentional. The Assistant District Attorney corrected himself immediately after the defense attorney noted his mistake. The defendant contends that this reference to first degree murder was highly prejudicial, in that it makes him appear to be charged with a more serious offense.
We fail to see how the jury was misled or the defendant prejudiced. The jury venire was present during voir dire. The record reflects that these potential jurors heard the crime of second degree murder referred to at least five times before the prosecutor accidentally referred to first degree murder, and several times after the accidental reference to first degree murder. Therefore, it is clear that the jury was aware that the defendant was charged with attempted second degree murder, not first degree. Furthermore, the defendant's failure to timely move for a mistrial or request an admonition is a waiver of any error he may have claimed. LSA-C.Cr.P. arts. 771, 775. State v. Kohler, 434 So.2d 1110 (La. App. 1st Cir.1983). This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER THREE:
Defendant argues that the trial judge committed reversible error in denying a challenge for cause of a prospective juror.
Martha Walker testified that she was a social worker supervisor for a state child abuse and neglect program. She stated that she occasionally had indirect dealings with the probation department if one of the foster children were arrested. She also stated that her agency sends reports to the district attorney's office but that the decision to file charges against parents is made by the district attorney's office alone.
Louisiana Code of Criminal Procedure article 797(3) provides:
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *

*662 (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
When asked by defense counsel if her relationship with the district attorney's office or any law enforcement personnel would tend to influence her decision in this case, she replied, "[N]o it would not, my job and education has [sic] provided me with training in the areas of looking at evidence and making decisions."
It is within the sound discretion of the trial judge to determine the competency of a juror. State v. Weathers, 320 So.2d 895 (La.1975). We find no abuse of this discretion. Martha Walker's answers during voir dire established that she could accord the defendant a fair trial. See State v. Wilkerson, 326 So.2d 353, 356 (La.1976). Furthermore, the defendant cannot complain on appeal of this ruling because he did not object to the trial court's refusal to grant his challenge for cause. See LSA-C.Cr.P. art. 800. This assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS FOUR AND FIVE:
Defendant contends that the trial judge erred in denying his motions for mistrial after prejudicial remarks made by two different state witnesses during their testimony. During the direct examination of Jack Jambon, the following colloquy occurred:
BY THE STATE:
Q. You knew Mr. Serigny before this incident?
A. Yes, sir.
Q. You have been knowing him a long time?
A. Yes, sir. He had robbed my place before.
BY MR. CAILLOUET:
Objection, Your Honor.
During direct examination of Ted Weatherall, the following exchange took place:
BY THE STATE:
Q. Did Mr. Serigny, tell you at any time that he wanted to shoot Mr. Jambon?
A. Yes, sir, previous to that.
Q. When was that?
A. I really couldn't give you a date, he just mentioned it a few times in passing because the man had supposedly put him in the penitentiary.
BY MR. CAILLOUET:
Objection, Your Honor.
On both occasions, defendant moved for a mistrial. The trial judge admonished the jury to disregard both of the remarks; however, he refused to grant defense counsel's motions for mistrial.
A direct or indirect reference to another crime committed or alleged to have been committed by defendant, made within the hearing of the jury by the judge, district attorney, or court official, during trial or in argument, would require a mistrial on motion of the defendant. LSA-C.Cr.P. art. 770(2). However, these witnesses were not court officials; therefore article 770 does not apply. Instead, the applicable provision is LSA-C.Cr.P. art. 771. State v. Hutto, 349 So.2d 318, 321 (La.1977).
Louisiana Code of Criminal Procedure article 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark *663 or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In both situations, the answer of the witness went beyond the scope of the question asked by the prosecutor. Therefore, these remarks were unsolicited and unresponsive to the questions asked. Unsolicited and unresponsive testimony is not chargeable against the state to provide a ground for the reversal of a conviction. State v. Hutto. In State v. Hutto, on direct examination, the following exchange took place between the prosecutor and a state witness:
Q. Do you know the Defendant, Earl Hutto?
A. I didn't know him until the night before he robbed our store.
349 So.2d at 320.
This response is similar to the one made herein by Jack Jambon. In Hutto, the trial court admonished the jury but refused to grant a mistrial. The Louisiana Supreme Court concluded that the trial judge did not err in denying defendant's motion for a mistrial.
In State v. Kimble, 375 So.2d 924 (La. 1979), a state witness made a remark similar to the one made by Ted Weatherall in the instant case. In Kimble, when the prosecutor asked the witness why the defendant did not participate in a particular drugstore burglary, the witness replied that defendant was "already on Federal parole." In that case, the Louisiana Supreme Court concluded that the trial court did not err in denying defendant's motion for a mistrial.
For the above reasons, these assignments are without merit.
ASSIGNMENT OF ERROR NUMBER EIGHT:
Defendant assigns as error the fact that the trial court allowed the State to introduce into evidence and play for the jury tape recordings which had been enhanced. In his brief, defendant does not object to the enhancement of the tape recordings. Rather, he objects to their introduction into evidence on the basis that the State failed to produce the proper chain of custody.
In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case. State v. Taylor, 422 So.2d 109, 115 (La.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983). A continuous chain of custody is not essential to enable the State to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized. State v. Vaughn, 431 So.2d 763, 767-768, (La. 1983). Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Taylor. Ultimately, chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. State v. Freeman, 306 So.2d 703, 704 (La.1975).
The state proved that the tape recording was made by Detective Allan Wall and that he turned it over to the evidence officer, Detective Paul Lirette. Paul Lirette testified that he sent the tape to the F.B.I. in Washington, D.C., to be enhanced. This mailing was by registered mail. Special Agent Keith Sponholpe testified as to the F.B.I. procedures involved in receiving and returning evidence. He also testified as to the procedures he performed in enhancing the tape. Paul Lirette also testified that the tape was returned from the F.B.I. by registered mail.
We find that the State established a substantial, if not complete, chain of custody for the tape recordings. Therefore, the tape recordings were properly admitted into evidence. It was the role of the jury to assess the weight to be given to the tape recordings. This assignment lacks merit.
*664 ASSIGNMENT OF ERROR NUMBER NINE:
Defendant argues that he is entitled to a new trial because a certain portion of a taped statement was played after the State and the defense had agreed it would not be presented to the jury.
During the trial, a tape recording of a conversation between Ted Weatherall and the defendant was played to the jury. Before the tape recording was played, the defense and the state agreed that certain parts of the conversation would be deleted. The first passage to be excluded was "[A]nd marijuana bust my house, my brother, I had about maybe a joint in the bust. And they couldn't put nothing on me, but I know that's what is going on here man." The reel-to-reel tape machine was being operated by Detective Allan Wall of the LaFourche Parish Sheriff's Office. When the tape reached the first passage to be deleted, Detective Wall advanced the tape. However, he did not advance the tape far enough and the words "marijuana bust" were played inadvertently. At this point, defense counsel objected. The trial court stated to the jury, "[W]ell let me say this, when your machine stopped, and then a word came through, you may or may not have understood that word. I admonish you to ignore that word totally, it has absolutely nothing to do with this case." The tape was then advanced and the rest of the passage to be deleted was bypassed.
Defense counsel contends that the playing of the two words "marijuana bust" prejudiced the defendant and did not allow him to receive a fair trial. The State contends, we believe correctly, that there was no reason for the jury to make any connection between the two words "marijuana bust" and defendant. There is nothing in the record to suggest that those two words, taken out of context as they were, referred to defendant. They could have referred to Weatherall or anyone else whose name was mentioned in the conversation.
Defendant has failed to demonstrate how he was prejudiced by the inadvertent playing of these two words. It should be noted that, after the words were played, defense counsel merely offered a general objection. Defendant did not request a mistrial; therefore, he cannot on appeal complain of the alleged error. State v. Michel, 422 So.2d 1115, 1121 (La. 1982). Furthermore, we believe that the admonition by the trial court was sufficient to dispel any prejudice which may have resulted from the playing of these two words. We find no merit in this assignment of error.
ASSIGNMENT OF ERROR NUMBER ELEVEN:
Defendant argues that the trial judge committed reversible error in denying his motion to suppress the tape recorded conversation between Ted Weatherall and himself. The conversation was tape recorded through the use of a hidden electronic transmitter. Defendant contends that his rights under the Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution have been violated because he did not consent to the tape recording and the conversation was recorded without a warrant.
In State v. Reeves, 427 So.2d 403 (La.1982), the Louisiana Supreme Court, on rehearing, held that warrantless consensual electronic surveillance did not invade the defendant's privacy within the meaning of the Louisiana Constitution, Article I, § 5. In Reeves, one of the parties consented to the recording of the conversation. The Supreme Court found that Reeves did not exhibit an actual expectation of privacy, because he chose to enter into a conversation with someone. The Supreme Court reasoned that, by entering into a conversation, the defendant assumed the risk that his confidences might be disclosed to anyone by the listener.
Defendant tries to distinguish the instant case from Reeves by arguing that the instant recording was not the result of "consensual" electronic surveillance. Defendant argues that Ted Weatherall's consent *665 was not freely given, because it was the result of inducements or promises made by the State. He argues that the State promised to be lenient with Weatherall in exchange for his consent to the electronic surveillance.
The record reflects that Weatherall cooperated voluntarily. On redirect examination, the following colloquy took place between the prosecutor and Ted Weatherall:
Q. Did you agree voluntarily to wear the body bug?
A. Yes, sir, I did.
Q. Did you voluntarily give a statement?
A. Yes, sir, I did.
Q. Okay, and why did you do that?
A. Because I felt it was my duty. And like I said I had messed up one time in my life and that was a long time ago and I'm a productive part of society now, so. I just felt it was my duty.
This assignment of error is without merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.