MADELEINE M. LANDRIEU, Judge.
| Edward Augustine was charged by bill of information with one count of manslaughter, a violation of Louisiana Revised Statute 14:31; one count of possession with intent to distribute heroin, a violation of Louisiana Revised Statute 40:966(A)(1); and one count of unauthorized use of a vehicle, a violation of Louisiana Revised Statute 14:68.4. Following a jury trial, Mr. Augustine was convicted on all three counts.
The trial court sentenced Mr. Augustine to forty years at hard labor for the manslaughter count, forty years at hard labor for the possession with intent to distribute heroin count, and ten years at hard labor for the unauthorized use of a motor vehicle count. The court ordered that the sentences were to run concurrently and Mr. Augustine was given credit for time served. Mr. Augustine then pled guilty to *1205 the multiple offender bill of information filed by the State. The trial court vacated the original sentences and issued new sentences of fifty years at hard labor each for the manslaughter and possession with intent to distribute heroin counts, and twenty years at hard labor for the unauthorized use of a motor vehicle count.[1]
[ 2Mr. Augustine filed the instant appeal alleging two assignments of error through counsel: that the trial court erred in denying his motion for mistrial based on the trial court allowing testimony regarding a “prior bad act,” and that the trial court erred in denying his motion for mistrial based on the trial court allowing testimony regarding his brother’s prior bad acts. Mr. Augustine also filed a pro se brief alleging two additional assignments of error: that his inability to thoroughly cross-examine one of the State’s witnesses violated his constitutional right of confrontation, and that the trial court erred in allowing the jury to have written materials during deliberations.
For the reasons that follow, we affirm Mr. Augustine’s convictions and sentences.
FACTS
Just before midnight on January 7, 2011, Officer Justin Ferris was driving west on S. Claiborne Avenue when he observed a silver Hyundai Sonata turn right on a red light at the corner of S. Claiborne and S. Carrollton Avenues. He was patrolling alone. Traffic at that corner is allowed to turn right on a green arrow only. Officer Ferris decided to stop the Sonata for the traffic violation.
Officer Ferris turned his lights and siren on, but the Sonata did not stop. He then pulled alongside the Sonata and saw the driver, Mr. Augustine, discharging a large amount of a powdered substance. Mr. Augustine then turned right onto Belfast Street. Believing Mr. Augustine had committed a traffic violation and a narcotics violation, Officer Ferris called in and received permission to pursue Mr. Augustine’s car. The pursuit lasted three to four minutes and reached speeds of approximately seventy miles per hour through residential neighborhoods.
| ¡¡Officer Ferris testified that he terminated the pursuit while crossing the intersection of Milan Street and S. Claiborne Avenue, after realizing he was going the wrong way on a one-way street. The chase ended at the corner of Milan and Freret Streets, when Mr. Augustine collided with a utility pole and another car. Mr. Augustine fled the scene, but Officer Ferris chased him on foot and managed to capture Mr. Augustine using a Taser as he tried to jump a fence in an unlit alley next to a house further down Milan Street, towards the river.
After apprehending Mr. Augustine, Officer Ferris returned with Mr. Augustine to the scene of the accident. It was then that Officer Ferris realized that Mr. Augustine had not only struck a utility pole, but had also struck another vehicle, killing a passenger in that vehicle, Ms. Mariah Wood. Ms. Wood was a freshman in college and home for the Christmas holidays when she was killed.
Mr. Augustine was arrested and a search incident to his arrest produced eight bags of heroin in his right front *1206 pocket. Other contraband was discovered in the possession of two men who were passengers in Mr. Augustine’s vehicle. Thereafter, pursuant to a search at Central Lockup, Orleans Parish Sheriffs Office Deputy Ronald Price discovered $1,400 in cash in Mr. Augustine’s pocket.
Detective Brandon Singleton and Sergeant Mark Amos responded to Officer Ferris’ initial call for assistance. They arrived at the scene of the crash and found two occupants in Mr. Augustine’s car— Lavell Stovall and Gerard Martin. Both men were in a dazed state from the accident. As Det. Singleton helped remove Mr. Stovall from the Sonata, he discovered that Mr. Stovall was holding a clear plastic bag containing what appeared to be a “softball-size clear bag with a lot of foils ... consistent with heroin.” Detective Jacob Lundy also responded to Officer Ferris’ call for assistance. He and another officer transported Mr. Stovall and Mr. Martin |4to the hospital. There, a doctor who treated Mr. Martin gave Det. Lundy a plastic package containing what appeared to be heroin that had been recovered from Mr. Martin.
During a subsequent investigation, Officer Ferris learned that the Sonata Mr. Augustine was driving had been stolen from his girlfriend’s mother, Patricia Fobbs. According to testimony at trial, Ms. Fobbs woke in the middle of the night and noticed her car keys and car were missing. Her daughter, Brandi, told her that Mr. Augustine had been there earlier. Although she was reluctant to get Mr. Augustine in trouble as he and Brandi had a child together, Ms. Fobbs called the police to report that her car was missing. Later that evening, Ms. Fobbs received a call about the accident. At trial, Ms. Fobbs testified that she was the only authorized driver of the Sonata but admitted to allowing Brandi to drive it. She denied, however, ever giving Mr. Augustine permission to drive the car.

ERRORS PATENT

The record reveals one error patent. The trial court failed to abide by sentencing delays found in Louisiana Code of Criminal Procedure article 873 when it issued an original sentence immediately after denying Mr. Augustine’s Motion for New Trial and for Post-Verdict Judgment of Acquittal.
In addressing a failure to abide by the sentencing delay mandated by article 873, the Louisiana Supreme Court has stated that when there has been no objection raised regarding the sentence imposed and no showing or suggestion that the defendant was prejudiced by the failure to observe the delay, judicial efficiency dictates that this court need not follow the useless formality of remanding for reimpo-sition of a sentence which has not been challenged. State v. White, 404 So.2d 1202, 1204 (La.1981). Accordingly, this Court has held that where a [¡¡defendant does not challenge his sentence on appeal, any failure to abide by sentencing delays pursuant to Louisiana Code of Criminal Procedure article 873 is harmless error. State v. Collins, 584 So.2d 356 (La.App. 4th Cir.1991). Therefore, the trial court’s error is harmless and merits no relief.

ASSIGNMENTS OF ERROR

Mr. Augustine raises four assignments of error. The first two assignments are asserted by counsel for Mr. Augustine. The third and fourth assignments are raised by Mr. Augustine pro se.
1. The trial court erred in denying Mr. Augustine’s request for a mistrial after a witness testified that Mr. Augustine was previously wanted for murder.
*1207 2. The trial court erred in allowing a prejudicial line of questioning concerning alleged prior bad acts of Mr. Augustine’s brother.
3. The trial court violated Mr. Augustine’s constitutional right to confront witnesses by limiting his inability to thoroughly cross-examine one of the State’s witnesses.
4. The trial court erred in allowing the jury to have written materials during deliberations.

DISCUSSION

PRIOR BAD ACTS OF DEFENDANT

In his first assignment of error, Mr. Augustine asserts that the trial court erred in denying his motion for a mistrial following the cross-examination of a police officer, Sgt. Michael Sam, about a 2007 incident in which Sgt. Sam was involved in a chase with Mr. Augustine. Mr. Augustine did not object to any of Sgt. Sam’s testimony on direct examination. His assignment of error relates to a comment by Sgt. Sam in response to a question asked of him by defense counsel.
|ñSgt. Sam was called by the State. He testified that he first came in contact with Mr. Augustine back on December 18, 2007 when he was on patrol in an unmarked vehicle with Louisiana National Guardsman Mark Aucoin. Sgt. Sam and Mr. Augustine were traveling in opposite directions crossing over the Palmetto Street canal when Sgt. Sam noticed that neither Mr. Augustine nor his passenger was wearing a seatbelt. Sgt. Sam decided to stop Mr. Augustine’s vehicle and turned his vehicle around to do so. However, by the time he turned around, Sgt. Sam noticed Mr. Augustine’s car was “getting rather small rather quickly,” indicating increased speed. As Sgt. Sam pursued Mr. Augustine, Mr. Augustine quickly turned into a driveway at 9120 Palmetto Street and jumped out of the car while it'was still moving. His vehicle crashed into a shed at that address.
Sgt. Sam stopped his car in front of the driveway and he and Mr. Aucoin began chasing Mr. Augustine on foot. Mr. Augustine, however, hopped a fence and eluded the officers. When Sgt. Sam returned to his car, a white Ford Expedition was quickly backing out of the driveway of the Palmetto Street house. Sgt. Sam recognized the passenger in that vehicle to be the same passenger who had been travel-ling with Mr. Augustine. Sgt. Sam stopped the Expedition and detained both the driver and the passenger.
Later that same day, Sgt. Sam identified Mr. Augustine in a photographic lineup. He testified that before this incident he did not know Mr. Augustine but that he saw his face as he came upon Mr. Augustine on the Palmetto Street crossover. Sgt. Sam further testified that. Mr. Augustine was never arrested or charged with any crime arising from that incident.
On cross-examination, the following colloquy took place between defense counsel and Sgt. Sam:
|7Q: You’re testifying about something that has nothing to do with this case that we’re here for today, right?
A: No, I’m here speaking about, ah, the incident when the defendant ran from me inside of his vehicle and crashed into 9120 Palmetto.
Q: An incident he wasn’t charged for, right?
A: That is correct. Would you like for me to explain that?
Q: Explain why he wasn’t charged? Why don’t you explain to us why he wasn’t arrested first?
A: Okay. Ah, the reason why the defendant wasn’t arrested was because after he was identified via photographic lineup, I(sic) was found- that he was *1208 wanted for murder, and after finding out that he was wanted for murder—
Counsel for Mr. Augustine immediately objected and moved for a mistrial which was denied. In this assignment of error, Mr. Augustine alleges that Sgt. Sam’s reference to him being wanted on a murder charge mandated a mistrial pursuant to Louisiana Code of Criminal Procedure articles 770, 771 and Louisiana Code of Evidence article 404(B) and that it was error for the trial court not to grant one.
Code of Criminal Procedure article 770(2) provides that a trial court shall order a mistrial when a “judge, district attorney or court official” makes a remark or comment within the hearing of the jury referring directly or indirectly to “another crime committed or alleged to have been committed by the defendant as to which the evidence is not admissible.” In the event such a comment is made, an admonition by the court directing the jury to disregard the comment is insufficient to prevent a mistrial. La.C.Cr. P. art 770.
It is well-established that a police officer is not a “court official” for purposes of article 770. State v. Jones, 2007-0533, p. 4 (La.App. 4 Cir. 12/28/07), 975 So.2d 73, 77; State v. Hegwood, 345 So.2d 1179, 1184 (La.1977); State v. Hardy, 344 So.2d 1018, 1021 (La.1977). However, it is worth noting that the year following Hegwood and Hardy, the Louisiana Supreme Court, in State v. Schwartz, 354 So.2d 1332 (La.1978), questioned the wisdom of “our recent statements that a police officer witness is not a ‘court official’ whose reference to inadmissible other crimes evidence mandates a mistrial under La.C.Cr.P. art 770.” The Court in that case noted that a police officer’s gratuitous implication of the defendant in other crimes and the officer’s recurring pattern of unresponsive answers in a number of cases would not be excused as inadvertent, unplanned or unexpected by a prosecutor. Id. at 1333, n. 2.
In the instant case, there is no allegation that Sgt. Sam was engaged in a pattern of unresponsive answers and no evidence that the prosecution intended to elicit the “other crimes” statement from Sgt. Sam. The statement of concern to the defense was a direct response by Sgt. Sam to a question posed to him by counsel for the defendant. The trial court did not err in denying the defense motion for a mistrial pursuant to Code of Criminal Procedure article 770.
Code of Criminal Procedure article 771 provides that, in circumstances where mistrial is not required, an admonition to the jury to disregard a remark or comment made by a witness within the hearing of the jury might be warranted. Such an admonition, “upon the request of the defendant or the state,” is warranted when the remark by the witness is “irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury.” La.C.Cr.P. art. 771. Article 771 also provides the court with an option of granting a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In State v. Kimble, 375 So.2d 924 (La.1979), the Supreme Court held that “the state cannot be charged with testimony elicited by defense counsel implying that defendant had previously committed other crimes and that defendant cannot claim reversible error on the basis of that evidence which is elicited.” This holding was reiterated by the Court in State v. Tribbet, 415 So.2d 182, 184 (La.1982). In Tribbet, the defendant moved for a mistrial but did not request an admonition. Thus, the Court held that any failure by the trial judge in not issuing an admonition was not reversible error. Id. at 185.
In the instant case, the complained of comment was elicited by counsel for the defendant and was offered by the witness *1209 in direct response to a question asked of him. Further, counsel for the defendant did not request an admonition either contemporaneously with the statement made by Sgt. Sam or later, when the court conducted a hearing on the defense motion for a mistrial outside of the presence of the jury. There being no request for an admonition, this assignment of error is without merit.
Louisiana Code of Evidence article 404(B)(1) provides that “evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.” Testimony of this nature may only be used by the State for specified purposes after the requisite notice to the defendant of the State’s intent to introduce this evidence. Id. As this testimony was elicited by the defense counsel, this article is not applicable.
We find no error on the part of the trial court in its denial of Mr. Augustine’s motion for a mistrial.

J¿¡¡PRIOR BAD ACTS OF MR. AUGUSTINE’S BROTHER

In his second assignment of error, Mr. Augustine contends that the trial court erred by not granting his motion for mistrial based upon the following question to Sgt. Sam by the assistant district attorney:
Q: Just to flush [sic] out, Sergeant. So, um, the homicide that he was wanted on, um, when you chased him in '07, you don’t know if that’s the case where his brother intimidated the witness?
The trial court denied defense counsel’s motion for a mistrial, but admonished the jury to disregard the information in the assistant district attorney’s question.
Mr. Augustine asserts that the trial court erred by not granting a mistrial pursuant to Louisiana Code of Criminal Procedure article 771 due to the prosecutor’s reference to Mr. Augustine’s brother’s bad acts. He contends that a mistrial is warranted as a remark made by the district attorney that is “irrelevant or immaterial and of such a nature that it might create prejudice against the defendant” and does not fall within the scope of article 770(2) (reference to another crime committed by the defendant). La.C.Cr.P. art. 771(1).
Where the trial court determines that admonishment is insufficient to assure the defendant a fair trial, the trial court “may” grant a mistrial. La.C.Cr.P. art. 771. Mistrial is a drastic remedy that is authorized only where substantial prejudice will otherwise result to the defendant. State v. Ruffin, 2011-0135, p. 16 (La.App. 4 Cir. 12/21/11), 82 So.3d 497, 509. A trial court’s determination of whether to grant a mistrial should not be disturbed absent a clear abuse of discretion. Id.
In this case, the trial court admonished the jury not to consider the information asked by the assistant district attorney about Mr. Augustine’s brother. InThe trial court did not abuse its discretion in admonishing the jury in lieu of the drastic remedy of granting a mistrial. There is no merit to this assignment of error.

RIGHT TO CONFRONT WITNESSES

Mr. Augustine asserts that Off. Ferris was fired from the N.O.P.D. for lying to investigators regarding his pursuit of Mr. Augustine’s vehicle. He contends that he had a right to admit into evidence Off. Ferris’ disciplinary record and the right to cross-examine Off. Ferris on the circumstances surrounding his departure from the police department. Having been denied both opportunities, Mr. Augustine contends that his right of confrontation afforded to him by the Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution was violated. State v. Jackson, 03-883 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 852, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118.
*1210 However, there is no support in the record for Mr. Augustine’s allegations. The only references in the record supporting .Mr. Augustine’s assertions include a May 17⅜ 2012 minute entry stating, “Motion for defense not to introduce PIB report at trial. This matter is held open.” The docket master contains two other notations, “The Clerk’s office received ... Motion in limine to exclude questions and extrinsic evidence pertaining to witness’s particular acts, vices, or courses of conduct which have not resulted in criminal convictions” and “Motion for defense not to introduce PIB report at trial. This matter held open.” The record before us does not contain a copy of this motion in limine, does not contain a copy of the PIB report in question, and does not reflect a ruling by the trial court on the motion. Additionally, the transcript does not contain any questions by the State or the defense to Officer Ferris about the circumstances of his departure from the police department.
| ^Accordingly, the record on appeal is insufficient to address this issue. Mr. Augustine has an adequate remedy in post-conviction proceedings. See La.C.Cr.P. arts. 930 (allowing evidentiary hearing) and 930.3 (grounds for relief, including a constitutional violation).

WRITTEN MATERIALS ALLOWED IN JURY ROOM

In his last assignment of error, Mr. Augustine asserts that the trial court erred in allowing the jury to review transcripts of recorded conversations in the jury room in violation of Louisiana Code of Criminal Procedure article 793. This article provides, in pertinent part, that a juror shall not have access to any written evidence. It further provides that in response to a request by a juror, the trial court has the discretion to send evidence to the jury when a physical examination of it is required to enable the jury to arrive at a verdict.
The record reflects that during deliberations the jury asked to hear the recordings of calls made by Mr. Augustine from jail while he was incarcerated prior to trial. These recordings were played for the jury during trial when Mr. Don Hancock, a telephone supervisor at the Orleans Parish Sheriffs ' Office, was called to the stand. He testified that he oversees operations of all telecommunications systems, including two inmate phone systems. After authenticating the recordings and laying the foundation for their admissibility, the State played recordings of three conversations Mr. Augustine had on the morning of January 8, 2011. The State also introduced transcripts of the first two conversations. One transcript was of a conversation between Mr. Augustine and his girlfriend, Brandi Fobbs. During this conversation, Mr. Augustine stated that he had “dope” in the car and that he was trying to throw it out of the car window, but his passengers did not want him to.
[ isThe record reflects that defense counsel objected to the admissibility of the transcripts based upon the fact that Mr. Hancock had not himself transcribed the statements. The court overruled this objection. During deliberations, when the jury asked for the recordings of the conversations, the trial court specifically asked defense counsel, “Any objection to them having the transcript with it?” Defense counsel replied, “Subject to the previous objection. Remember, I objected?” Accordingly, when the trial court asked if there was any objection to letting the jury see the transcripts during deliberation, the only objection submitted was a renewed objection to the transcripts’ admissibility, not one based on Louisiana Code of Criminal Procedure article 793.
Louisiana Code of Criminal Procedure article 841 provides that an error cannot be availed of after verdict unless it was objected to at the time of the occurrence. *1211 Accordingly, this issue has not been preserved for review.

CONCLUSION

For the foregoing reasons, we affirm Mr. Augustine’s convictions and sentences.
AFFIRMED

. In State v. Shaw, 2006-2467 (La.11/27/07), 969 So.2d 1233, the Louisiana Supreme Court overruled it previous decisions in State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991) and State v. Sherer, 411 So.2d 1050 (La.1982) and held that "[tjhere is no statutory bar to applying the habitual offender law in sentencing for more than one conviction obtained on the same date.” Shaw at 1245. The U.S. Supreme Court denied Mr. Shaw’s writ of habeas corpus in Shaw v. Warden, Louisiana State Penitentiary, 10-CV-0132, 2013 WL 3816486 (W.D.La. July 22, 2013).