SANDRA CABRINA JENKINS, Judge.
17 Defendant, Leonard Harris, was charged by bill of information with one count of attempted second degree murder in violation of La. R.S. 14:(27)30.1. Following a three-day trial, the jury returned a verdict of guilty as charged. The trial court denied defendant’s motion for new trial and post-verdict judgment of acquittal and sentenced defendant to serve a term of fifty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. Defendant appeals his conviction. As his sole assignment of error, defendant asserts the trial court erred in denying his motion for new trial. After reviewing the entire record, we find no merit to defendant’s argument on appeal. For the reasons discussed herein, we affirm defendant’s conviction and sentence.
FACTUAL BACKGROUND
Shelly Nelson (“Shelly”) was shot near the corner of St. Roch and Vienna Street in New Orleans, Louisiana on the morning of March 24, 2008. At trial, Detective Hal Amos (“Detective Amos”) testified that when he arrived at the scene, he found Shelly slumped over her steering wheel suffering from multiple gunshot wounds. Detective Amos met with Shelly the day after the shooting in the hospital. Despite *656 Shelly having tubes down her throat, according to Detective |2Amos, Shelly was able to verbally identify Leonard Gaines, her ex-ñancé, as the shooter. Detective Amos testified that Shelly further stated the shooter was driving a blue Ford Expedition and that Gaines was the father of her child, drove a green Lexus, worked offshore, and was able to provide Gaines’ date of birth. Two days after the shooting, Detective Amos returned to the hospital and found Shelly’s condition had improved. Shelly informed Detective Amos that she had no recollection of identifying Gaines as her shooter, and the actual shooter was the defendant, Leonard Harris.
Steve Nelson (“Steve”), the victim’s brother, testified that he was the first person to arrive at the hospital and was present when his sister initially identified Gaines as her attacker. He said that Shelly could not talk, but was able to scribble “L-E-N-A-R-D” on a piece of paper before the officers arrived at the hospital. Steve stated he was also present when his sister identified the defendant as the shooter. Upon Shelly hearing Steve say the name “Pluck,” Gaines’ nickname, she clarified that it was the wrong “Leonard” ' and the defendant, Leonard Harris, was actually the shooter. Steve immediately went to the police station and relayed this information to Detective Amos. According to Steve, his sister never verbally stated that Gaines shot her.
Yolanda Nelson (“Ms. Yolanda”) is the victim’s mother. Ms. Yolanda testified that while in the hospital, she began calling out names once hei; daughter regained consciousness. According to Ms. Yolanda, when she said “Pluck,” her daughter did not respond, but when she said “Leonard,” Shelly’s “eyes kind of opened and rolled back.” Ms. Yolanda thought her daughter was responding to Leonard Gaines’ name because that-is the only person she, herself, knew named Leonard. Ms. Yolanda then informed the police that her daughter had identified ¡¡¡Gaines as the shooter. Ms. Yolanda testified that some time later, it was discovered that Gaines was not the shooter when Shelly specified Gaines was not the Leonard that shot her — it was the defendant, Leonard Harris.
Shelly testified that she and defendant had gone out with friends the previous night for Easter Sunday. After returning home with her girlfriends that night, defendant repeatedly called Shelly and eventually showed up at her house. When presented with her phone records from that night, Shelly testified that defendant called her twenty-six times that day. Shelly went outside to talk with defendant in his truck. Shelly claims, despite his copious attempts, she did not allow defendant to come inside as she had a housing inspection scheduled for 8:00 a.m. the next morning.
On the morning of the shooting, as she sat in the car waiting for the housing inspection, Shelly saw a man, wearing a bandana and black hat, with a gun through her rear view mirror. The man began shooting from the back of the car, came around the side of the car, and continued shooting. When a screaming lady appeared, the shooter pulled his bandana off and Shelly opened her eyes to see that the shooter was the defendant, Leonard Harris. Shelly immediately called her mother to tell her she had been shot.
When Detective Amos arrived at the scene, Shelly nodded yes when asked if she knew the shooter but was not .asked who it was at that time. Shelly also told Detective Amos that she saw a blue Expedition on the street shortly before she was shot which was gone when the police arrived. Shelly did not recall scribbling the name “Lenard” in the hospital but did remember *657 being presented the photo lineup wherein she identified defendant as the shooter. Shelly identified defendant in court as the person who shot her and when asked if she was positive, Shelly |4replied, “Yes, I am.” Shelly claims Detective Amos lied about her verbally identifying Gaines as the shooter when she was in the hospital. Shelly also did not recall providing the type of car Gaines drove or his birthdate, as she explained she was heavily medicated while in the hospital.
Based on the interview with Shelly, Detective Amos obtained an arrest warrant for Leonard Harris. The defendant was subsequently arrested and charged with the attempted second degree murder of Shelly Nelson.[1]
ERRORS PATENT
In accordance with La.C.Cr.P. art. 920, all appeals are reviewed by this Court for errors patent on the face of the record. After reviewing the record, we note one error patent. The trial court failed to follow the sentencing delays mandated by La.C.Cr.P. art. 873 when it issued an original sentence immediately after denying defendant’s motion for new trial and post-verdict judgment of acquittal.
This Court recently addressed the same error patent by stating:
In addressing a failure to abide by the sentencing delay mandated by Louisiana Code of Criminal Procedure article 873, the Louisiana Supreme Court has stated that when there has been no objection raised regarding the sentence imposed and no showing or suggestion that the defendant was prejudiced by the failure to observe the delay, judicial efficiency dictates that this court need not follow the useless formality of remanding for reimposition of a sentence which has not been challenged. Accordingly, this Court has held that where a defendant does not challenge his sentence on appeal, any failure to abide by sentencing delays pursuant to Louisiana Code of Criminal Procedure article 873 is harmless error. Therefore, the trial court’s error is harmless and merits no relief.
State v. Augustine, 12-1759, pp. 4-5 (La.App. 4 Cir. 9/18/13), 125 So.3d 1203, 1206, writ denied, 13-2484 (La.4/4/14), 135 So.3d 639 (internal citations omitted). The defendant has not assigned error as to his sentence. For the reasons expressed in Augustine, this error patent is harmless and merits no relief.
LAW AND ANALYSIS
In his sole assignment of error, defendant argues that the trial court erred in failing to declare a mistrial or grant a new trial. In support of his argument, defendant points to closing arguments, wherein the State urged that Detective Amos’ testimony should be disregarded due to inconsistencies with Shelly’s testimony. Defendant asserts that the State’s failure to inform the defense of Detective Amos being a liar was in direct violation of La.C.Cr.P. art. 729.3[2] and Brady v. Mary *658 land, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[3]
A motion for new trial is governed by La.C.Cr.P. art. 851.[4] Absent a clear showing of abuse of discretion, a trial court’s ruling on a motion for new trial will not be disturbed. State v. Weathersby, 13-0258, p. 21 (La.App. 4 Cir. 4/16/14), 140 So.3d 260, 272 (citing State v. Quimby, 419 So.2d 951, 960 (La.1982)).
IfiWe summarized the Brady rule in State v. Dominick, 13-0121, p. 13 (La.App. 4 Cir. 11/20/13), 129 So.3d 782, 791(quoting State v. Hollins, 11-1435, pp. 23-24 (La.App. 4 Cir. 8/29/13), 123 So.3d 840), as follows:
Due process requires the disclosure of evidence that is both favorable to the accused and material either to guilt or punishment. The Brady rule also requires the disclosure of evidence adversely affecting the credibility of government witnesses. When such information is not disclosed and it is material in that its suppression undermines the confidence in the outcome of the trial, then constitutional error occurs and the conviction must be reversed. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Materiality hinges on “not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Further, the defendant must show that “disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable.” (internal citations omitted).
We further noted, “there is no Brady violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose.” Id., 13-0121, p. 14, 129 So.3d at 791 (internal citations omitted).
Defendant identifies three testimonial discrepancies and argues that the State’s failure to disclose justifies granting a new trial. We find the purported discrepancies are neither material nor exculpatory, but will nevertheless be addressed. The first alleged inconsistency urged by defendant is Shelly’s initial identification of Gaines as her attacker appears to have been a misunderstanding that was rectified. Shelly’s brother and mother stated that Shelly could not speak |7when she managed to identify Leonard as her shooter, which they immediately assumed meant Leonard Gaines as that was the only Leonard they knew. However, both testified that when Shelly felt better, a day later, she clarified that Leonard Harris, not Leonard Gaines, was her shooter and she has consistently identified him as the *659 shooter since regaining her ability to communicate. Shelly’s insistence that Gaines was not her shooter is further confirmed by the testimony of the Transocean representative who testified that company records show that Gaines was offshore at the time of the shooting.
The second alleged discrepancy involves the inconsistency between the forensic evidence location of the shooter versus Shelly’s placement of the shooter. Shelly’s recollection as to where defendant was standing when she was shot does not change the fact that she knew the shooter and identified him as Leonard Harris. The physical evidence introduced at trial— showing the location of bullet casings at the crime scene — confirms the shooter began shooting from the back of the car and moved to the front driver’s side where Shelly was sitting.
The last inconsistency is whether or not Shelly could speak after surgery. Shelly’s testimony is that she could not speak after surgery because of the tube down her throat which temporarily severed her vocal cords, whereas Detective Amos asserts the two had a conversation wherein she verbally identified the shooter. This taped conversation was played to the jury and the doctor who performed Shelly’s surgery also testified that “there is no possible way that she could give any type of verbal communication” on the day in question. The witnesses’ testimony and introduction of the taped conversation clarifies any discrepancy that may have been had.
|sWe find no Brady violations in this case. Defendant’s argument is simply his objection to the State’s strategy of impeaching its own witness after discrepancies between Detective Amos’ testimony and that of others appeared during trial. A party has a right to challenge his own witness by independent evidence, although the effect of the contradictory evidence is to discredit the witness. See La. C.E. arts. 607 and 611; see also, State v. Gordon, unpub., 10-1286, pp. 10-12 (La.App. 4 Cir. 8/19/11), 2011 WL 9160384. Furthermore, regardless of what the State recommended in closing arguments, it was well within the jury’s discretion to weigh the conflicting testimony as they saw fit. State v. Jackson, 12-0090, p. 19 (La.App. 4 Cir. 4/24/13), 115 So.3d 1155, 1166, writ denied, 13-1235 (La.12/2/13), 126 So.3d 497, cert. denied, — U.S. -, 134 S.Ct. 1950, 188 L.Ed.2d 962 (U.S.2014); State v. Hankton, 12-0466, p. 12 (La.App. 4 Cir. 4/30/14), 140 So.3d 398, 407 (“It is the jury’s province to weigh the evidence and the credibility of the witnesses and its finding will not be disturbed absent an abuse of discretion.”) (citing State v. Barnes, 11-1421 (La.App. 4 Cir. 9/19/12), 100 So.3d 926).
In the present case, defendant failed to prove he suffered any injustice and we cannot say the trial court’s decision to deny the motion for new trial was in error. Defendant’s argument is without merit.
DECREE
For the foregoing reasons, the defendant’s conviction is affirmed.
AFFIRMED.

. By the time of trial, Shelly had undergone seventeen surgeries and is permanently paralyzed from the waist down.

. La.C.Cr.P. art. 729.3 provides, “If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.”

. Defendant also argues the State’s actions violated La. Prof. Code of Conduct Rule 3.3.

. La.C.Cr.P. art. 851 states:
A. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
[[Image here]]
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.